**BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY, a Michigan constitutional corporation, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Defendant.**

**No. L88–348 CA5.**

United States District Court, W.D. Michigan.

Feb. 16, 1990.

Sally S. Harwood, Michigan State University, Office of General Counsel, East Lansing, Mich., for plaintiff.

Roy H. Christiansen, Kerr, Russell & Weber, Detroit, Mich., and Shirley S. Okrent, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, Minn., for defendant.

## OPINION

ENSLEN, District Judge.

This action involves questions of whether insurance coverage is owed to plaintiff, Board of Trustees of Michigan State University ("MSU"), by defendant, Continental Casualty Company ("Continental"), for defense costs and settlement of a claim arising out of the demotion and eventual termination of a former employee. Continental has filed a motion for partial summary judgment on Counts II and III of plaintiff's complaint, and a second motion for summary judgment on the defense issue and settlement costs. MSU has filed a cross-motion for partial summary judgment on the issue of defense costs.

## FACTS

### I. *The Underlying Litigation*

Donald I. Smith was the Director of MSU's School of Hotel, Restaurant & Institutional Management until approximately September 1983 when he was demoted to a faculty position, and later terminated.

In November 1983, Smith commenced an action against MSU, its Board of Trustees and Dean Richard J. Lewis in the Circuit Court for the County of Ingham. In his complaint, Smith alleged breach of his em-

ployment contract and violation of Michigan Whistleblower's Protection Act. Smith further alleged that he sustained damage to his "reputation in the community, professional reputation and good name." Defendant's attachment # 1, ¶ 40. Apparently as a result of Michigan's procedural requirement that actions against the state be brought in the Court of Claims, Smith simultaneously commenced a separate, although initially identical, action in the Court of Claims. In the same month, November, 1983, Smith amended the Circuit Court Complaint to add allegations that Dean Lewis made "various false and defamatory statements concerning plaintiff." Defendant's attachment 3, Count IV. These two actions were eventually "consolidated" and assigned to one circuit court judge.

In January 1984, Smith commenced a third action in U.S. District Court against Cecil Mackey, the President of MSU, Dean Lewis, and Clarence L. Widner, the University's Provost. This complaint alleged retaliatory violation of constitutional due rights and failure to provide due process. The complaint also alleged "irreparable injury to Plaintiff's reputation and harm to his future earning capacity, embarrassment, deprivation of a self-fulfilling occupation, [and] a loss of professional and self esteem...." Defendant's Attachment # 4, ¶ 19.

In March 1987, all three suits were settled by a $40,000 payment from the University to Smith. Pursuant to the Release, one third of the settlement amount was payment of wrongful discharge and breach of employment contract claims and two-thirds was payment of "personal injury" claims. Defendant's Attachment 6.

## II. The Insurance Policies

*Hartford Policy.* At the time of the Smith legal actions and settlement, MSU and its employees were insured under a general liability policy issued by the Hartford Accident and Indemnity Company ("Hartford Policy"). The general insuring clause of the Hartford policy provides coverage for "bodily injury" or "property damage" caused by an "occurrence." It is clear that coverage of the Smith incident does not arise under either of these clauses. However, by virtue of Endorsements 26 and 27 to the policy, the policy also provides that Hartford will pay "all sums which the insured shall become legally obligated to pay because of injury (herein called personal injury) ... arising out of ... the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy." Plaintiff's Exhibit ("Ex.") E. In addition to providing for payment of covered damages, Endorsement 26 contains a "duty to defend" clause which states that Hartford "shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent...." *Id.* The policy provided this coverage not only to MSU but also to its individual officers and employees.

The Hartford policy also contains an "other insurance" provision which states:

> *Other insurance.* The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

The Hartford policy personal liability insurance limit at the time of the underlying litigation was $1,000,000 with no retention applicable.

*The Continental Board of Education Policy.* Also in effect at the time of the Smith litigation and settlement was a Board of Education Liability Including School District Reimbursement Policy ("BEL policy" or "Continental Policy") issued by the defendant, Continental Casualty Company. This policy provided for indemnification of "loss" caused by "wrongful act". Loss is defined in the policy as:

... any amount which the Assureds are legally obligated to pay or for which the [University] may be required or permitted to pay as indemnity to the Assureds, for a claim or claims made against the Assureds for a Wrongful Act and shall include but not be limited to damages, judgments, settlements and costs, cost of investigation and defense of legal actions, (excluding from such costs of investigation and defense, salaries of officers or employees of the [University] or any other governmental body) claims or proceedings and appeals therefrom ...

Plaintiff's Ex. D.

"Wrongful Act" is defined in the BEL policy as:

... any actual or alleged errors or misstatement or misleading statement or act or omission or neglect or breach of duty by the Assureds in the discharge of their duties, individually or collectively, or any matter claimed against them solely by reason or their being or having been Assureds during this policy period.

*Id.*

The following exclusions contained in the BEL policy Clause IV(b), as amended by the Liberalization Endorsement attached to the BEL policy are also at issue:

IV(b) The Insurer shall not be liable to make any payment for loss in connection with any claim against the Assureds and/or the [University]:

(1) which is insured by another valid policy or policies except as provided in (4);

.    .    .    .    .

(4) for false arrest, libel, slander, defamation of character, invasion of privacy, wrongful eviction, assault or battery except insofar as may be insured under any other valid policy or policies and then only in excess of such insurance.

*Id.*

The BEL policy did not contain a duty to defend clause but rather promised to reimburse the Assureds for those losses covered under the policy. The BEL policy limit of liability at the time of the underlying litigation was $5,000,000. BEL policy claims at that time were subject to a $10,000 retention.

### III. *Positions of the Parties*

There are a number of issues involved and the parties have deluged the Court with paper. For the sake of clarity, I will attempt to summarize the positions of the parties on the various issues.

Plaintiff's complaint has three counts. Count One alleges breach of contract and claims that Continental owes MSU amounts sufficient to reimburse it for attorney fees, cost and settlement payments made by MSU in connection with the Smith litigation. Count Two seeks to recover for alleged violation of the Uniform Trade Practices Act as codified in Mich.Comp.L. § 500.2026, and states a claim of breach of implied covenant of good faith and fair dealing. Count Three seeks penalty interest for alleged violations of Mich.Comp.L. § 500.2006.

MSU, in its motion for partial summary judgment, asserts that Continental has promised to pay all loss, including attorney fees, which it incurred in connection with the Smith litigation.[1] It asserts that the underlying litigation contained allegations of wrongful acts, wrongful employment actions, constitutional violations and Whistleblower's Protection Act, all of which were covered under Continental's policy. It further asserts that although the BEL policy was a reimbursement policy and did not contain a "duty to defend" clause, the "duty to reimburse for defense cost 'loss' is not limited by policy language solely to defense costs incurred in defending against covered allegations." Plaintiff Brief at 11. It claims that the standard duty to defend and the Continental duty to reimburse for defense costs differ only with respect to the timing of payment and control of defense. Brief at 12.

Continental, in its motion for summary judgment, claims first that Hartford had a primary duty to defend the entire Smith claim and second that Hartford has a duty to indemnify MSU for the Smith settle-

---

**1.** For reasons not specified to this Court, MSU is not proceeding against Hartford.

ment. It asserts that because one of the complaints in the Smith litigation contained a direct claim of defamation, and the others stated damages which were related to defamation, and the governing law construing duty to defend clauses requires that Hartford pay the defense costs of all the actions, Continental is relieved of any cost. Continental argues that its coverage was clearly excess coverage to that provided by Hartford for defamation. It also argues that the duty to reimburse clause in its policy imposes a lesser duty than a duty to defend clause such as found in the Hartford policy. Continental also urges that Hartford should be deemed to have waived all of its defenses by failing to defend the Smith litigation and that as such it is liable to pay the full amount of the settlement entered into.

## STANDARD

### I. *Motion for Summary Judgment*

In considering a motion for summary judgment, the narrow questions presented to this Court are whether there are "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." F.R.Civ. Proc. 56(c). The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only where there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982).

The moving party has a right to summary judgment where that party is able to demonstrate, prior to trial, that the claims of the plaintiff have no factual basis. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Supreme Court held in *Celotex*, "... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. Moreover, the Court must read the allegations of the complaint in the light most favorable to the non-moving party.

*Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir.1983). Where, as here, the moving party has supported its motion with documents, the non-moving party may not rest on the mere allegations or denials of the pleadings, but must set forth "specific facts showing that there is a genuine issue of trial." F.R.Civ.Proc. 56(e); *Davis v. Robbs*, 794 F.2d 1129, 1130 (6th Cir.1986).

The standard for granting a motion for summary judgment is essentially the same as that for granting a motion for a directed verdict. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party is not entitled to summary judgment where there is sufficient evidence to allow a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–249, 106 S.Ct. at 2510–2511, 91 L.Ed.2d at 211–212. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216. With this standard in mind, the Court will review the arguments presented by both parties.

## DISCUSSION

### I. *Defense Costs*

A primary question which must be examined is the nature and connection between the three underlying lawsuits. If I find that the suits are so intertwined as to be impossible to separate expenses, then one of the two insurance companies will necessarily be liable for the entire defense costs. On the facts given, it is clear that the lawsuit filed in Circuit Court contained an explicit defamation claim. The Hartford Insurance policy contained coverage for a defamation claim. Endorsement 26 clearly states that Hartford will pay "... all sums which the insured shall become legally obligated to pay because of ... the publication or utterance of a libel or slander or of other defamatory or disparaging material...." Plaintiff's Ex. E at PT–2. Fur-

ther, the Endorsement provides that Hartford "... shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury even if any of the allegations of the suit are groundless, false or fraudulent...." *Id.* Just as clearly, Continental's coverage for defamation was excessive coverage only, promising to pay for "... libel, slander, defamation of character ... [only] insofar as may be insured under any other valid policy or policies and then only in excess of such insurance." Plaintiff's Ex. D at 2. Giving these words their plain meaning, it is clear that MSU should have looked to Hartford to provide defense to at least the Circuit Court action which explicitly contained the defamation claim. Continental's liability was only to provide coverage if the cost of defending the claim went over the $1,000,000 limit of the Hartford policy. This did not happen.

The more difficult question is whether, as defendant contends, the three lawsuits arose from the same set of facts and were so closely intertwined that Hartford had an obligation to defend the entire claim including all three suits. MSU objects to this interpretation and argues that the majority of the counts of the underlying Smith suits alleged wrongful acts which fall within the Continental policy, and that Continental has a duty to reimburse MSU for the entirety of its legal expenses.

It is true that MSU counsel[2] for the underlying actions agreed that one set of discovery would be sufficient for all three actions and that depositions taken in one case would be effective for all three actions. Deposition ("Depo.") Higgins at 38; Depo. Dykema at 10–14, 47; Depo. Carr at 29–32. It is also true that the Circuit Court case and the Court of Claims case were eventually assigned to one judge. These facts, however, while showing a heeding of the need for judicial and legal economy, do not support a claim that the cases are not distinguishable for the purposes of allocation of expenses. The defendants were not the same in each case[3] and more importantly, independent counsel was hired for Dean Lewis.[4]

Most importantly, only the complaint filed in the Circuit Court contained an allegation of defamation. Continental attempts to diminish this fact by pointing out that the other two complaints alleged loss of reputation, professional and personal esteem and professional standing as damages. However, allegations contained in a request for damages do not give rise to a specific allegation of defamation or personal injury as defined in the Hartford policy.

Continental also argues that Hartford's duty to defend clause, as opposed to its own reimbursement clause, requires that Hartford "look behind" the allegations in the pleadings and construe the language in the complaints broadly in favor of MSU. Continental is right in its assertion that under Michigan law an insurer with a duty to defend must defend an entire action if any portion of that action is even arguably covered under its insurance policy. *Allstate Ins. Co. v. Demps*, 133 Mich.App. 168, 348 N.W.2d 720 (1984); *Reurink Bros. Star Silo, Inc. v. Maryland Cas. Co.*, 131 Mich.App. 139, 345 N.W.2d 659 (1983); *Ins. Co. of North America v. Forty Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir. 1980). This is certainly applicable to the Circuit Court case which contained an explicit claim of defamation. However, I do

2. The three complaints were defended initially by salaried university legal counsel. When the in-house university counsel left for a position with another university, outside counsel was selected to defend the university.

3. Defendants in the Circuit Court case were MSU, the Board of Trustees of MSU and Dean Lewis. The Court of Claims case listed only MSU and the Board of Trustees as defendants. The case filed in U.S. District Court was against Cecil Mackey, Clarence L. Winder and Dean Lewis.

4. Separate legal counsel was engaged for the Dean because MSU counsel perceived a potential for conflict between the interests of the University and the Dean, who was Smith's immediate supervisor and the primary target of funds-mishandling allegations upon which the Whistleblower's Protection Act claim was based. Upon the death of the Dean's first attorney, substitute legal counsel was engaged for him, also at MSU's expense. Plaintiff's Brief at 4.

not believe that this maxim stretches to cover all three complaints filed in the underlying litigation. Neither the Court of Claims complaint nor the U.S. District Court complaint contained allegations of defamation of personal injury.[5] Rather, these complaints assert violations of the Whistleblower's Protection Act (Mich. Comp.L. 15.361 et seq.), breach of employment contract, breach of good faith and fair dealing, and constitutional violations stemming from Smith's termination. These claims all fall within the "wrongful acts" coverage provided by the Continental policy.

However, I do not find MSU's argument that the BEL policy's reimbursement clause requires Continental to pay defense costs for allegations of claims not covered by the BEL policy to be persuasive. Duty to defend clauses and reimbursement clauses are two different things. Under the BEL policy reimbursement clause, MSU retained the right to select and retain defense counsel. Further, "loss" whether incurred by way of judgment, settlement, or defense costs, is charged against the policy limit without distinguishing between damages and legal fees. *Continental Casualty Co. v. Board of Education of Charles County*, 302 Md. 516, 489 A.2d 536 (1985). As the court noted in *Zaborac v. American Casualty Co.*, 663 F.Supp. 330, 333 (C.D.Ill. 1987), "... the fact that the insurance company has agreed to reimburse the defense costs of the insured does not create a duty to defend on the part of the insurance company." *See also* D. Howard, *Apportioning an Insurers' Liability Between Covered and Non–Covered Parties Claims*, FICC Quarterly 319, 328, 332 (Summer 1988). ("Apportionment of defense costs is thus treated in the same way as allocation of damages, unlike the situation under a duty to defend policy, where the very notion of apportioning defense costs may be irrelevant since the insured

has purchased litigation insurance with his premium. By extricating themselves from involvement in the underlying action, and preserving their right to subsequently disclaim expense reimbursement for non-covered claims, duty to pay carriers can and do charge lower premiums than their duty to defend counterparts.")

In sum, I find that Continental is liable to MSU for reimbursement of the expenses associated with the defense of the entire Court of Claims action and the U.S. District Court action.[6] MSU cannot, however, look to Continental for coverage of the Circuit Court action which contained the defamation claim. The Hartford policy provided primary coverage for defamation claims and that coverage contained a duty to defend clause, which under prevailing Michigan law, requires the insurer to defend any complaint in its entirety which asserts a claim covered by the policy. Accordingly, the parties shall allocate defense costs in light of these parameters.

The Court is mindful of the complexity of allocation. It will not be easy to separate defense costs of actions which were handled in the manner plaintiff chose to handle these. Plaintiff, although preferring that Continental be held liable for all defense costs associated with the Smith litigations, has suggested that if allocation is required it be made in accordance with the rule of *Farm Bureau Mutual Insurance Co. v. Horace Mann Insurance Co.*, 131 Mich. App. 98, 345 N.W.2d 655 (1983).

In *Farm Bureau*, suit was brought against a public school teacher for injuries sustained by a student in a shop class. The teacher was insured under two separate policies, one provided by the Michigan Education Association and other provided by the school district. Each policy contained an "other insurance" policy. The Horace Mann policy contained what is commonly

---

5. This, of course, is the major distinction between *Widener Univ. v. F.S. James & Co.*, 371 Pa.Super. 79, 537 A.2d 829 (1988) and the case at bar. In *Widener*, whose reasoning the defendant strongly urges me to adopt, the court specifically noted that all of the underlying actions contained allegations of defamation. *Id.* at n. 5.

6. Although the Court of Claims action was eventually consolidated with the Circuit Court action, I assume that the parties will find a satisfactory method for allocating the defense costs after the consolidation.

known as an "escape clause" which provided:

> This policy does not apply to any claim made or suit brought against the insured which is insured by another valid policy or policies, whether primary or excess, nor shall [Horace Mann] be liable to make any payment in connection with any such claim.

The Farm Bureau policy contained what is commonly known as a "pro rata" clause which provided:

> This insurance is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.
>
> When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company will not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
>
> . . . . .
>
> Contribution by Limits: ... [T]he Company shall not be liable for a greater proportion of such loss that the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

The court, adopting the minority view, found these two clauses to be "repugnant" and disregarded them. It then ordered that liability between the two insurers be prorated in proportion to their policy terms.

Despite plaintiff's urging, a major distinction between *Farm Bureau* and this case exists. In *Farm Bureau*, the court specifically noted that "both parties agree[d] that either of the policies would cover the loss if the other did not exist." *Id.* at 101, 345 N.W.2d 655. This is not true in the case at bar. If the Hartford policy did not exist, Continental would not be liable for any claim involving def-

amation, nor would it be required to defend such a claim appended to covered claims in a complaint, because its policy does not contain a duty to defend clause, with the concomitant broad defense responsibility. If the Continental policy did not exist, Hartford would still be required to defend the defamation claim and would be responsible to defend against all the claims in the complaint under its duty to defend clause and prevailing law. Accordingly, I find an essential element of the *Farm Bureau* analysis to be lacking here and decline to adopt its method of allocation.

Because I have found that defendant Continental does owe MSU reimbursement for a portion of the legal fees associated with the Smith litigation, it becomes necessary to consider Counts Two and Three of plaintiff's complaint and the motions filed by both parties concerning these counts.

## II. *Duty of Good Faith*

■ Defendant claims Count Two of plaintiff's complaint alleges a violation of Mich.Comp.L. § 500.2026. Plaintiff claims that it states a breach of "a duty of good faith and fair dealing." Because plaintiff's complaint is less than clear, I will address both contentions.

Mich.Comp.L. § 500.2026 contains an extensive list of "unfair methods of competition and unfair or deceptive acts or practices in the business of insurance." It is clear, as defendant argues and plaintiff apparently concedes, by failing to address the issue in its response brief, that Mich. Comp.L. § 500.2026 does not provide for a private cause of action by an insured. *Bell v. League Life Insurance Co.*, 149 Mich. App. 481, 485, 387 N.W.2d 154 (1986) ("... no private cause of action arising from provisions of the [Uniform Trade Practices Act]."); *Young v. Michigan Mutual Insurance Co.*, 139 Mich.App. 600, 606, 362 N.W.2d 844 (1984) ("insured does not have an independent cause of action under M.C.L. § 500.2026."). Accordingly, to the extent that Count Two of plaintiff's complaint alleges a violation of § 500.2026, summary judgment is granted to defendant.

■ Plaintiff claims that Count Two states a violation of defendant's duty of good faith and fair dealing as imposed in contractual relationships. In support of its argument it cites to *Murphy v. Cincinnati Insurance Co.*, 772 F.2d 273 (6th Cir.1985) which recognized that Michigan law implies a covenant of good faith and fair dealing in insurance contracts. In *Murphy*, the court upheld a jury finding of bad faith against an insurance company for failure to act "fairly and reasonably in investigating and denying plaintiffs' claims." *Id.* at 275. The court upheld the jury instruction given at the trial which stated that "in order to determine that defendant breached its duty to act in good faith, the jury must find that it acted in 'callous disregard' for the rights of plaintiffs." *Murphy*, 772 F.2d at 276.[7]

Plaintiff has failed to allege any specific conduct of defendant which violates good faith. Defendant's actions in this matter do not rise to the level of 'callous disregard.' Defendant's motion for summary judgment on Count Two of plaintiff's complaint as it pertains to breach of a duty of good faith and fair dealing is granted. Accordingly, summary judgment on Count Two in its entirety is granted.

## III. *Penalty Interest*

Count Three of plaintiff's complaint asserts that Continental is obligated to pay interest at the rate of 12% per annum on the amount of attorney's fees, cost and settlement payment it owes to the University. Count Three is based on Mich.Comp.L. § 500.2006 which provides in relevant part:

Sec. 2006. (1) A person must pay on a timely basis to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant the benefits provided under the terms of its policy, or, in the alternative, the person must pay to its insured, an individual or entity directly entitled to benefits under its insured's contract of insurance, or a third party tort claimant 12% interest, as provided in

subsection (4), on claims not paid on a timely basis. Failure to pay claims on a timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute.

. . . . .

(4) When benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. Where the claimant is a third party tort claimant, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum if the liability of the insurer for the claim is not reasonably in dispute and the insurer has refused payment in bad faith, such bad faith having been determined by a court of law.

The defendant cites to *Medley v. Canady*, 126 Mich.App. 739, 337 N.W.2d 909 (1983) in support of its proposition that MSU must show:

(1) that satisfactory proof of loss was received by the insurer;

(2) that the liability of the insurer for the claim not be reasonably in dispute;

(3) that the insurer refused payment of the claim; and

(4) that the refusal to pay was in bad faith.

*Medley*, 126 Mich.App. at 743, 337 N.W.2d 909.

Plaintiff argues that the only prerequisite to its recovering 12% interest under § 500.2006 is that it provided Continental with satisfactory proof of loss. It claims that only payments to third party claimants must meet the four part test in *Medley*.

The plaintiff in *Medley* was a third party tort claimant and the question of whether

---

**7.** The Court noted that the Michigan Appeals Court in *Commercial Insurance v. Liberty Mutual Insurance*, 137 Mich.App. 381, 357 N.W.2d 861 (1984) defined bad faith in the common law

context as "being more than negligence but something less than fraud." *Murphy*, 772 F.2d at 276 n. 1.

an insured also had to meet the same requirements was not addressed. In *Siller v. Employers of Wausau*, 123 Mich.App. 140, 333 N.W.2d 197 (1983), the court upheld a 12% penalty award to an insured individual noting that § 500.2006 allowed an insurer to refuse to pay a claim and be relieved of paying interest in that claim only when "the claim is reasonably in dispute." *Id.* at 143–44, 333 N.W.2d 197. In *Siller*, the court found that the insurance clause under which the defendant asserted the claim was in dispute was clearly invalid and found that the defendant was wrong in relying on this statute to protect itself from penalty interest payments. The Sixth Circuit considered the question of penalty interest in *All American Life and Casualty Company v. Oceanic Trade Alliance Council International*, 756 F.2d 474, 481 (6th Cir.1985). Citing Mich.Comp.L. § 500.2006(1), the court construed the statute as providing that an award of penalty interest was appropriate only when the claim is not "reasonably in dispute." It specifically noted the last sentence in § 500.2006(1) which provides: "Failure to pay claims on a timely basis or top pay interest on claims as provided in subsection (4) is an unfair trade practice *unless the claim is reasonably in dispute.*" *Id.* at 481 (emphasis added in *American Life*.)

It is well recognized that the purpose of § 500.2006(4) is to penalize insurers for dilatory practices in settling meritorious claims. *E.g., Medley*, 126 Mich.App. at 743, 337 N.W.2d 909. It is not intended to compensate a plaintiff for delay in recovering funds which are ultimately determined to rightfully belong to him or her. This is accomplished by the 6% judgment interest provision of Mich.Comp.L. 600.6013. Further, as a penalty Mich.Comp.L. § 500.2006(4) is to be strictly construed.

■ Plaintiff urges me not to follow the lead provided in these cases, claiming that "[u]nder current Michigan law an assertion of a private right to statutory interest should be considered separately from the statute's definitional provision enabling public enforcement," and that [r]eading the subsection [1] unfair practices reference

into the interest payment provisions of subsection [4] . . . . violates established rules of statutory construction by rendering unnecessary . . . the express subsection (4) provision . . ." Brief at 9. Plaintiff is unable to cite to any case law, legislative history, or statutory support for its proposition. In light of past court opinions on § 500.2006, I find plaintiff's argument unpersuasive.

■ Thus, plaintiff must show that the claim in question was not reasonably in dispute in order to successfully impose 12% penalty interest. The question of whether a claim is "reasonably in dispute" is one for the court. *American Life*, 756 F.2d at 482. In this case, the presence of a defamation claim in one of the Smith complaints was enough to render MSU's claim against Continental reasonably in dispute. Accordingly, defendant's motion for summary judgment on Count Three of plaintiff's complaint is granted, and plaintiff's motion is denied.

## IV. *Settlement Costs*

Despite plaintiff's assertions that questions of fact remain, allocation of the $40,000 settlement is a much easier question than those previously considered. Plaintiff's claim that an "assessment of facts relating to the basis for settlement and to the types of claims which remained at issue in the underlying litigation . . .", Brief at 9, is necessary before allocation of the settlement costs can occur, is unpersuasive. The settlement agreement itself provides that one-third of the payment was intended as payment for wages and compensation and two-thirds as payment for personal injury compensation. This language parallels that found in the insurance policies. Accordingly, I find that Continental is liable for the one-third portion of the settlement attributable to payment for wages and compensation.

## V. *Sanctions*

Defendant has requested that sanctions be imposed on MSU pursuant to Federal Rule of Civil Procedure 11. Rule 11 of the Federal Rules of Civil Procedure explicitly confers upon a federal court the authority

to impose fines or sanctions when a party has filed a pleading which is not "well grounded in fact [nor] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Continental's allegations that some of MSU's claims were filed solely to harass are unsupported and do not support a finding that MSU's pleadings were not filed in good faith. Accordingly, defendant's request for Rule 11 sanctions is denied. Each party shall bear its own costs in this matter.

### JUDGMENT

In accordance with the opinion entered this date;

IT IS HEREBY ORDERED that defendant's motion for summary judgment on Counts II and III of plaintiff's complaint is GRANTED;

IT IS FURTHER ORDERED that defendant's and plaintiff's cross-motions for summary judgment on the issue of defense and settlement costs are GRANTED in part and DENIED in part.