**LANSING COMMUNITY COLLEGE, Plaintiff,**

v.

**CONTINENTAL CASUALTY COMPANY, Defendant.**

No. 5:93–CV–147.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 22, 1994.

Mark S. Allard, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, MI, David E. Bennett, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for plaintiff.

Christian A. Preus, Meagher & Geer, Minneapolis, MN, for defendant.

## *OPINION*

QUIST, District Judge.

Lansing Community College (LCC) brought this action against Continental Casualty Company (Continental) seeking reimbursement for attorneys' fees and costs it incurred in defending a civil rights suit. This matter is before the Court on Continental's motion for summary judgment and LCC's motion for partial summary judgment on Count I.

### *Factual Background*

LCC seeks reimbursement for attorneys' fees and expenses incurred in the successful defense of *Johnston–Taylor, et al. v. Gannon, et al.*, No. G86 661 CA5 (W.D.Mich.). The lawsuit arose from a reduction in force in 1983, in which LCC laid off several professors, including Mr. Arganian and Mr. Taylor. These two professors brought grievances and initiated separate court actions in 1983. LCC prevailed on these claims. In 1986, after Mr. Taylor committed suicide, his wife and Mr. Arganian brought another lawsuit asserting several constitutional and discrimination claims and also a wrongful death claim regarding Mr. Taylor. Count I alleged that the layoff of Arganian and Taylor violated their rights to procedural and substantive due process guaranteed by the Fourteenth Amendment to the U.S. Constitution. Count II related only to Taylor and asserted that LCC laid off Taylor in retaliation for his union activities, in violation of his First Amendment rights. Count III also related only to Taylor; it alleged that LCC's unconstitutional conduct caused Taylor to commit suicide and asserted a cause of action under the Michigan Wrongful Death Act. In Count IV, each party asserted an age discrimination claim under the Elliott–Larsen Civil Rights Act. The action sought an unspecified amount of actual and exemplary damages for each plaintiff. Arganian also sought reinstatement with back pay. After extensive proceedings, including an appeal to the Sixth Circuit, LCC's motion for summary judgment was granted on the constitutional claims. The pendent state claims were dismissed for lack of jurisdiction.

At issue in the instant case is liability for the attorneys' fees and costs LCC incurred in defending itself in the *Johnston–Taylor* case, which totaled approximately $320,000. LCC asserts that defendant is liable for these fees under a Board of Education Liability Policy (BEL Policy) that Continental issued to plaintiff. That policy provides coverage to LCC for specifically defined "loss" caused by "wrongful acts" subject to a $2,500 retention and a $5 million limit of liability.

Defendant argues that there is no coverage under the BEL Policy because the complete defense of the lawsuit was covered under other general liability policies issued to LCC by other carriers and specifically excluded under the BEL Policy. The Policy also provides at Clause IV that:

(b) The Insurer shall not be liable to make any payments for loss in connection with any claim against the Assureds:

(1) which is insured by another valid policy or policies except as provided in (4).[1]

Defendant asserts that the Policy did not contain a "duty to defend" obligation. Rather, the Policy states:

The Assureds and/or the School District shall select and retain legal counsel to represent them in the defense and appeal of any claim, suit, action, or proceeding covered under this policy, but no fees, costs, or expenses shall be incurred or settlements made, without consent, such consent not to be unreasonably withheld.

Defendant also maintains that the BEL Policy only provides for reimbursement for "defense of legal actions" within the definition of the term "loss" and that "bodily injury" and "personal injury" are not within the definition of the term "loss."

The other relevant policy to which Continental refers is an Insurance Company of North America "School–College" policy (INA Policy). The INA Policy is a comprehensive general liability policy providing personal injury and property damage coverage, with a $500,000 limit of liability and no deductible. It included a duty to defend obligation that provided: "the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such personal injury or property damage...." This duty to defend obligation is "in addition to the applicable limit of liability" provided by the INA Policy. "Personal injury" is defined in the INA Policy to include "bodily injury" and a variety of other types of injury. "Bodily injury" is defined to include "bodily injury, sickness or disease sustained by any person, including death at any time resulting therefrom." There is no dispute that the INA Policy applied to the wrongful death claim in the *Johnston–Taylor* case.

Defendant argues that LCC was entitled to a full defense of the *Johnston–Taylor* lawsuit from INA and that INA agreed to provide this defense and appointed the Reid & Reid law firm to carry out the defense. Defendant maintains that, since the BEL

Policy does not provide coverage for any loss in connection with any claim covered by another insurance policy and the entire duty to defend was an obligation of the INA Policy, the BEL Policy provides no coverage for this claim.

LCC notified its insurers, including defendant, promptly after the *Johnston–Taylor* case was filed. INA stated that it would defend LCC in the action but disclaimed liability for all the claims in the lawsuit except Taylor's wrongful death action. INA's reservation of rights letter advised LCC that it was retaining the Lansing firm Reid, Reid, Perry, Lasky, Hollander & Chalmers (Reid) to appear in the action but also stated that LCC may find it advisable to retain counsel at its own expense.

Plaintiff retained Robert Claus, of Vedder, Price, Kaufman & Kammholz (Vedder Price), the firm that had successfully defended it in the earlier claims arising from the lay-offs. Plaintiff argues that defendant should be liable for the costs of defense LCC incurred from Vedder Price because Continental was the primary beneficiary of the successful defense, in that the principal claims that were litigated fell squarely within the BEL Policy's coverage. In giving notice of the 1986 action, LCC notified Continental that Robert Claus, the attorney that represented it in the earlier actions, was handling the matter. Continental responded to the notice in a letter dated October 3, 1986, (Ex. 32), by acknowledging coverage of Counts I, II, and IV, subject to certain reservations of rights which did not include any reference to Exclusion IV(b)(1) (insurer not liable for any claim insured by another valid policy), and acknowledging that Robert Claus of Vedder Price would represent LCC. Continental sent a second reservation of rights letter on September 16, 1987 (Ex. 42), taking the position that INA should be responsible for all the defense costs.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact

---

1. Subsection 4 provides for excess coverage of defamation and other specified tort claims, none of which are present here.

and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. The summary judgment standard mirrors the standard for a directed verdict. The only difference between the two is procedural. Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. 477 U.S. at 250–51, 106 S.Ct. at 2511.

■ A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi*, 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

*Interpretation of the Insurance Contract*

■ LCC claims that the exclusion on which defendant bases its motion for summary judgment is ambiguous and should be interpreted against the insurer. The provision reads in pertinent part:

IV. Exclusions

(b) The insurer shall not be liable to make any payment for loss in connection with any claim against the Assureds,

(1) which is insured by another valid policy or policies . . . .

LCC focuses on the word "claim," asserting that, in the *Johnston–Taylor* lawsuit, defendant was on the line for five out of the six claims and that defendant should not be able to escape its obligation to pay for the defense of those claims simply because of the wrongful death claim, for which INA was responsible. Plaintiff argues that defendant has failed to distinguish between "claim" and "suit" and that it should be liable for defense costs for claims for which it would have had to pay settlement or damage costs if LCC had not prevailed.

LCC cites in support of its position *Board of Trustees of Michigan State University v. Continental Casualty Co.*, 730 F.Supp. 1408 (W.D.Mich.1990) (Enslen, J.), *appeal dismissed*, 914 F.2d 255 (6th Cir.1990) (*MSU* ), in which three similar cases were filed arising out of the same employment termination. Continental was the insurer for most of the claims raised in these actions. However, one of the three cases included a defamation claim that was covered by another carrier. *Id.* at 1413–14. The court analyzed whether the three suits were so closely intertwined that the other insurer "had an obligation to defend the entire claim including all three suits." *Id.* at 1413. The court concluded that the three suits were not so closely related that Continental could escape its obligation to pay for the defense of the two suits filed in federal court, neither of which included a defamation or any other personal injury claim. *Id.* at 1414.[2]

2. Plaintiff characterized the three cases at issue in the coverage dispute as a consolidated litigation, but in fact, the case that included the defa-

mation claim was filed in state circuit court and was only "eventually" consolidated with the Court of Claims action. *Id.* at 1414 n. 6.

*MSU* does not, however, support plaintiff's position. In fact, it provides stronger support for defendant. The court stated:

Continental is right in its assertion that under Michigan law an insurer with a duty to defend must defend an entire action if any portion of that action is even arguably covered under its insurance policy. *Allstate Ins. Co. v. Demps,* 133 Mich.App. 168, 348 N.W.2d 720 (1984); *Reurink Bros. Star Silo, Inc. v. Maryland Cas. Co.,* 131 Mich.App. 139, 345 N.W.2d 659 (1983); *Ins. Co. of North America v. Forty Eight Insulations, Inc.,* 633 F.2d 1212 (6th Cir. 1980).

*Id.* at 1413. Thus, in *MSU* the other insurer was held to be responsible for the entire defense of the state circuit court action even though Continental was liable for losses incurred on some of the claims in that action. In the instant action, there is no dispute that INA had a duty to defend the entire action pursuant to its policy since the action contained a claim covered by its policy.[3]

LCC cites no law other than the *MSU* case in support of its interpretation of Clause IV(b)(1). Defendant cites several cases in Michigan and elsewhere regarding the scope of a duty to defend obligation. *See Western Cas. & Sur. Group v. Coloma Township,* 140 Mich.App. 516, 520, 364 N.W.2d 367, 369 (1985) (duty to defend separate and severable from duty to indemnify from liability; extends to defense of entire suit despite asserted theories of liability not covered by insurer); *Federal Ins. Co. v. St. Paul Fire and Marine Ins. Co.,* 985 F.2d 979, 980 (8th Cir. 1993) (primary insurer responsible for entire defense costs although only one of several claims covered by primary policy); *Aetna Cas. & Sur. Co. v. Continental Cas. Co.,* 413 Mass. 730, 732–33, 604 N.E.2d 30, 32 (1992) (Continental's clause, which was identical to clause at issue in instant litigation, relieved it of all defense costs where primary insurer

had obligation to provide defense costs); *Continental Cas. Co. v. Canadian Universal Ins. Co.,* 924 F.2d 370 (1st Cir.1991) (In coverage dispute involving two separate cases, Continental liable for attorney fees only in case in which there was no primary insurer with coverage for defense costs).[4] Thus, even if "claim" were ambiguous, the case law makes it clear that Clause IV(b)(1) is to be interpreted as relieving an insurer of liability for defense costs if the claims for which the insurer is liable are included in a lawsuit in which another insurer is liable for the defense costs. INA's defense obligation insured LCC for the defense costs of the *Johnston–Taylor* lawsuit and relieved defendant of defense costs for any of the claims in the suit.

### *Equitable Argument*

■ LCC also makes the argument that defendant breached its duty of fair dealing by refusing to pay defense costs after it had agreed that it was responsible for such costs. LCC refers to the letter Susan J. Haug, a "claims specialist" at Continental, sent LCC on October 3, 1986 in response to the notice of the *Johnston–Taylor* lawsuit LCC's agent sent Continental on August 29, 1986.

The letter does not, however, make any affirmative commitment to pay defense costs. It merely acknowledges that Vedder Price was retained. In addition, plaintiff has not even attempted to establish that it retained Vedder Price in reliance on the alleged assurance from Continental.

### *CONCLUSION*

For the reasons set forth above, plaintiff's motion for partial summary judgment (docket no. 26) is DENIED and defendant's motion for summary judgment (docket no. 25) is

---

3. Plaintiff claims that INA attempted at one point to disclaim all responsibility for the lawsuit, on the grounds that the wrongful death claim was covered by worker's compensation. INA did not, however, cease to provide a defense for the case.

4. Continental also cites *Oakland University v. Insurance Co. of North America,* Civil Action No.

91–410907–CK (April 14, 1992, Circuit Court for the County of Oakland, State of Michigan), in which the court interpreted Clause IV(B)(1) and held that Continental was not liable for Oakland University's attorney fees because INA provided a valid policy that provided coverage for attorney fees.

GRANTED. An Order consistent with this Opinion will be entered.