**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 11 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FARMINGTON CASUALTY
COMPANY,

      Plaintiff - Appellant/
      Cross - Appellee,

      v.

UNITED EDUCATORS INSURANCE
RISK RETENTION GROUP, INC.,

      Defendant - Appellee/
      Cross - Appellant

Nos. 00-1524 & 00-1534
(D. C. No. 99-D-213)
(D. Colorado)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **ANDERSON** and **MURPHY**, Circuit
Judges.

      Plaintiff Farmington Casualty Company ("Farmington") and Defendant

United Educators Insurance Risk Retention Group, Inc. ("UE") both insured the

University of Denver ("DU"). Dr. Shiela Deitz sued DU when it denied her

tenure and ultimately fired her. Plaintiff Farmington paid the defense costs from

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Deitz's lawsuit, and brought suit against UE seeking contribution toward those costs. The district court required UE to reimburse Farmington $50,000 out of over $1 million in total defense costs. Farmington appeals, and UE cross-appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

The University of Denver carried two liability insurance policies – a primary insurance policy with Farmington and an excess insurance policy with UE. Farmington's policy covered:

> [T]hose sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this coverage part applies. We will have the right and duty to defend any suit seeking those damages. . . . If there is another primary insurer, the obligation will be shared equally, or pro-rata by limits.

The policy defined "personal injury" to include "[o]ral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or [o]ral or written publication of material that violates a person's right of privacy."

United Educators issued an insurance policy to DU which covered a broader range of claims, but was excess rather than primary insurance. It stated, in relevant part:

> [This policy's coverage includes claims based on] discrimination . . . sexual harassment . . . wrongful employment practices . . . oral or written publication of material that slanders or libels a person . . . failure to grant due process [and others].

. . . .

It shall be the duties of the Individual Insureds and/or Included Entities and not the duty of the Company to defend Claims made against the Insureds; provided that no costs shall be incurred without the Company's consent, such consent not to be unreasonably withheld.

. . . .

If other valid and collectable insurance with any other insurer . . . is available to the Insureds covering a Loss covered by this Policy, other than insurance which is expressly and specifically in excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance.

The UE policy further stated that it "shall be governed and construed in accord with the internal laws of the State of New York."

On October 31, 1995, Professor Sheila Deitz filed a lawsuit in the United States District Court for the District of Colorado against DU and several individual defendants ("Deitz I"). She brought several claims, including defamation, violations of the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA"), wrongful termination, civil rights violations, breach of contract, estoppel, and breach of implied covenant of good faith.

Deitz filed a second lawsuit against DU in the Denver District Court on April 18, 1997 ("Deitz II"), asserting claims for breach of contract, estoppel, retaliation, violation of the ADA, tortious interference with employment relations, and tortious interference with prospective economic advantage.

When it received notice of Deitz I, Farmington acknowledged its duty to

defend DU because of the presence of defamation-type claims, and retained counsel on behalf of DU.  United Educators approved DU's retention of its own separate counsel to monitor the defense counsel provided by Farmington.  After Deitz II was filed, both Farmington's and DU's attorneys agreed that the case should be removed to federal court and consolidated with the first case.  On June 6, 1997, a magistrate judge granted the motion for consolidation under Federal Rule of Civil Procedure 42(a).  The magistrate judge stated that the new claims could have, and probably should have, been brought as amendments to the original case, and that Deitz II should not be treated as an independent case for discovery.  Farmington agreed to continue defending the consolidated case, but denied coverage for the Deitz II portion, which did not contain any defamation claims.

In the Final Pretrial Order entered July 1, 1998, the magistrate judge granted a motion by Deitz to withdraw her remaining claims for injurious falsehood and defamation.  Farmington continued to defend DU, however, because it did not realize that Deitz had no remaining defamation claims.  At a hearing on November 16, 1999, Farmington mistakenly informed the trial court that a defamation claim remained against Buirski.

In a demand letter dated July 30, 1998, Farmington requested that UE reimburse it for ninety percent of the defense costs, asserting that each insurer

should pay defense costs in proportion to the number of claims covered by each insurer's policies. UE refused, noting that its policy was excess to other available insurance.

On February 2, 1999, Farmington invoked diversity jurisdiction and filed suit in federal district court demanding contribution from UE. Both parties moved for summary judgment. The district court divided the trial into two phases – a liability phase and a damages phase. In its liability ruling on December 2, 1999, the court applied New York law to construe the policy, but applied Colorado law for the underlying claims. The court concluded that Farmington, as the primary insurer, was not entitled to contribution or subrogation from UE for defense costs related to Deitz I. The court found, however, that Farmington was entitled to reimbursement of defense costs attributable only to Deitz II.

In the course of discovery, Farmington obtained claims notes from UE's adjuster. A note dated January 25, 1999 stated, "On another front, appears [Deitz] dropped her defam[ation] counts, which will eliminate [Farmington] from the case. Not clear why they are still offering up to $50k to settle . . . ." According to Farmington, its discovery of this note was the first time it realized that the last defamation claims in Deitz I had been abandoned. When it discovered this evidence, Farmington filed a Motion for Leave to File an Appended Supplemental Statement. Farmington sought to argue in its

supplemental statement that it should be reimbursed for all of the defense costs it incurred in Deitz I after the abandonment of the defamation claims. The district court denied Farmington's motion as untimely.

During the cost allocation phase of the trial, the parties stipulated that, according to the district court's liability formula, UE owed Farmington $50,000 related to the Deitz II portion of the lawsuits.

## II. Discussion

Farmington now appeals: the denial of its motion to file a supplemental statement; the choice of Colorado law; and the finding that UE was not liable for any of the costs of Deitz I. UE cross-appeals its liability for the Deitz II costs.

We review the grant or denial of summary judgment de novo, applying the same standard as the district court. Wark v. United States, 269 F.3d 1185, 1187 (10th Cir. 2001). Summary judgment is appropriate when there is no genuine issue of material fact, viewing the evidence in the light most favorable to the nonmoving party. Id.

## A. Motion to File Supplemental Statement

Farmington argues that it should have been allowed to file a supplemental statement regarding Deitz's abandonment of her defamation claims. It argues that this abandonment ended Farmington's duty to defend and increased the amount UE should contribute. The district court denied Farmington's motion as untimely.

A district court's evidentiary decisions relevant to a summary judgment ruling are reviewed for an abuse of discretion. Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998). The trial court does not abuse its discretion unless its decision is "arbitrary, capricious, whimsical, or manifestly unreasonable." United States v. Hernandez-Herrera, 952 F.2d 342, 343 (10th Cir. 1991).

Farmington made its motion to file a supplemental statement seventeen months after the pre-trial order withdrawing Deitz's defamation claim was entered. The district court had already heard oral arguments on the liability phase of Farmington's case, and issued its written opinion the same day Farmington filed its motion. While Farmington asserts that it did not realize that Deitz had dropped all of her defamation claims until immediately before it filed its motion, it should have learned this from the publicly filed July 1, 1998 order. Under such circumstances, we cannot say that the district court's denial of the motion as untimely was arbitrary, capricious, whimsical, or manifestly unreasonable. Cf. Viernow v. Euripides Dev. Corp., 157 F.3d 785, 800 (10th Cir. 1998) (finding no abuse of discretion in the denial as untimely of a motion to amend a complaint, where the motion was made 19 months after the original complaint was filed and after the judge had orally ruled on the matter on summary judgment); Singer v. Wadman, 745 F.2d 606, 608 (10th Cir. 1984) (finding no

abuse of discretion in the denial as untimely of a motion to recuse that was filed one year after the complaint was filed).  Because we find no abuse of discretion in the district court's denial of Farmington's motion, we need not consider Farmington's arguments premised on Deitz's abandonment of her defamation claims.

B.      The Choice of Law Provision

Farmington next argues that the district court erred in applying Colorado law instead of New York law to its claims against UE.  The UE policy's choice of law clause states that the policy "shall be governed and construed in accord with the internal laws of the State of New York."  The parties agree that the policy itself must be construed under New York law, but they disagree about which law applies to the related contribution claim.

A federal court sitting in diversity must apply the choice of law rules of the forum in which it sits.   Stuart v. Colo. Interstate Gas Co.    , 271 F.3d 1221, 1225 (10th Cir. 2001) (citing   Klaxon v. Stentor Electric Mfg. Co.    , 313 U.S. 487, 496-97 (1941)).  Colorado has adopted the Restatement (Second) of Conflict of Laws for choice of law issues in contract actions.      Wood Bros. Homes, Inc. v. Walker Adjustment Bureau   , 601 P.2d 1369, 1372 (Colo. 1979).

Farmington argues that New York law applies to all of the claims at issue, relying on subsection 187(2) of the Restatement (Second) of Conflict of Laws,

which states: "The law of the state chosen by the parties to govern their contractual rights and duties will be applied [unless an enumerated exception applies]." While the contract between Farmington and DU specified that New York law would apply, UE was not a party to that contract. New York law therefore cannot be considered the law of the state chosen by the parties.

Absent an effective choice of law by the parties, the Restatement's approach is to locate the state having the "most significant relationship" to the particular issue. TPLC, Inc. v. United Nat'l Ins. Co., 44 F.3d 1484, 1490 (10th Cir. 1995). Restatement § 188(3) states that, absent effective choice by the parties, "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied." Here, the contract was made and performed in Colorado. We therefore apply Colorado law.[1]

C.    Deitz I

Farmington argues that the defense costs for Deitz I should be apportioned by claim or pro rata between it and UE because most claims brought by Deitz were covered by UE's policy but not Farmington's. This argument is contradicted by the language of Farmington's policy, however, as it offers primary insurance

---

[1]Section 188(3) allows for the exceptions found in sections 189-199 and 203. This case does not fall under any of those exceptions.

that covers "suits," rather than individual claims. It states that Farmington has a "duty to defend any suit seeking [covered] damages." Moreover, Farmington's insurance policy is primary, providing: "This insurance is primary except when [an inapplicable exception] applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary." UE's insurance policy is excess, not primary, stating that "[i]f other valid and collectible insurance with any other insurer . . . is available to the Insureds covering a Loss covered by this Policy, other than insurance which is expressly and specifically in excess of this Policy, the insurance afforded by this Policy shall be in excess of and shall not contribute with such other insurance." For Deitz I, Farmington's insurance policy is primary, as it covers Deitz's claim for defamation, making UE's insurance excess. We enforce the terms of the policies, and under the terms of the policy Farmington is obligated as the primary insurer to pay defense costs. Colonial Ins. Co. of Cal. v. Am. Hardware Mut. Ins. Co., 969 P.2d 796, 800 (Colo. App. 1998).

Farmington contends that regardless of the policy provisions, UE has an equitable duty to contribute to defense costs. The district court rejected this argument, finding that Colorado law does not support such an equitable theory of contribution and that the cases cited by Farmington from other jurisdictions were factually distinguishable. We generally review a district court's rulings on

equitable relief for an abuse of discretion, but we review such rulings de novo when the availability of such equitable relief depends on an interpretation of the law. Downriver Cmty. Fed. Credit Union v. Penn Square Bank, 879 F.2d 754, 758 (10th Cir. 1989).

Relying on cases from California and other jurisdictions outside of Colorado, Farmington argues that allocation of defense costs between insurers is not governed by contract because no contract relation exists between insurers. E.g., Signal Companies v. Harbour Ins. Co., 612 P.2d 889, 895 (Cal. 1980). Instead, Farmington suggests allocation should be governed by "equitable principles designed to accomplish ultimate justice." Id.

Colorado courts have found, however, that the lack of contractual relations between the parties does not prevent an excess insurer from seeking contribution according to policy provisions. Nat'l Cas. Co. v. Great Southwest Fire Ins. Co., 833 P.2d 741, 747-48 (Colo. 1992) (en banc). Moreover, the only Colorado case Farmington cites in support of its equity argument is a factually distinguishable case, Millers' Mutual Insurance Ass'n v. Iowa National Mutual Insurance Co., 618 F. Supp. 301 (D. Colo. 1985). In Millers', the court held that an excess insurer could be required to contribute to defense costs. Unlike the present case, however, the policy limits of the primary insurer were sure to be exhausted by the judgments so that the excess insurance would come into effect. Id. at 306. The

other cases on which Farmington relies come from different jurisdictions, and are also factually distinguishable from the present case, as the district court correctly noted. We therefore find that the district court did not err in declining to grant Farmington equitable relief.

D.    <u>Deitz II</u>

United Educators cross-appeals the district court's finding that it is liable for Deitz II defense costs incurred after consolidation. The district court reasoned that UE could not circumvent its clear duty under its policy to cover Deitz II costs by the fortuitous event that its insured chose to remove the case to federal court and had its consolidation motion granted.

UE argues that after consolidation Farmington became the primary insurer because Farmington's policy requires it to defend any "suit" for covered claims, and not just the individual claims. UE points out that the plaintiff and principal defendant were the same in both actions, and the case had been consolidated by the magistrate judge, who stated that it would not treat Deitz II as a new independent case.

The magistrate judge stated that Deitz could have amended her first suit instead of filing a second one, and that the separate filing was likely an attempt to gain a new round of discovery for issues raised by Deitz I and Deitz II. In granting a motion for consolidation, but rejecting a request to treat Deitz II as a

separate case for purposes of discovery, the magistrate judge stated: "I do not agree that I should treat Deitz II as a new, independent case, and permit a new round of discovery the same as if Deitz I never existed." While the magistrate judge considered Deitz I and II the same case in some respects, the context suggests that the ruling was for discovery and procedural purposes, not for purposes of determining the insurers' contractual obligations.

Lawsuits consolidated under Rule 42(a), like this one, can retain their "separate identity." Patton v. Aerojet Ordnance Co., 765 F.2d 604, 606 (6th Cir. 1985). In a similar case, Board of Trustees of Michigan State University v. Continental Casualty Co., 730 F. Supp. 1408 (W.D. Mich. 1990), an excess insurer argued that three cases filed by the same plaintiff against different defendants were so closely intertwined that the primary insurer had a duty to defend all three suits. Id. at 1413. The Board of Trustees court rejected this argument, finding that the cases were distinguishable for the purposes of allocating expenses, despite the fact that they were all assigned to the same judge and only one set of discovery and depositions was taken for all three cases. Id. The court emphasized that only one of the complaints alleged defamation, which was covered by the excess insurer's policy. Id. We similarly find that the consolidated Deitz I and II cases retained their separate identities even after consolidation, and are distinguishable for purposes of allocating costs. We

therefore agree with the district court that UE is liable for the $50,000 in defense costs attributable solely to Deitz II.

### III.  Conclusion

The district court did not abuse its discretion in denying a motion to file a supplemental statement.  There was no genuine issue of material fact regarding whether Colorado law applies or how the defense costs should be allocated between the parties.  We therefore AFFIRM the district court's decision to grant summary judgment.  The motions by    both parties to seal portions of the record on appeal are GRANTED.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge