**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 30 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CHARLES W. WARK and SHAUNA L.
WARK, individually and as parents and
next friends of SAVANAH J. WARK, a
minor and as surviving parents of
LERISA D. WARK, deceased,

      Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

No. 00-1361

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 98-B-1620)**

---

Bethiah B. Crane (Alex C. Tejada, with her on the briefs), Crane and Tejada, P.C.,
Durango, Colorado, appearing for Appellants.

Martha Ann Paluch, Assistant United States Attorney (Thomas L. Strickland, United
States Attorney, with her on the brief), Office of the United States Attorney, Denver,
Colorado, appearing for Appellee.

---

Before **TACHA**, Chief Judge, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

The appellants, the Wark family, brought suit against the United States Forest Service for damages they suffered in an automobile accident. The district court granted summary judgment for the Forest Service, finding that it owed no duty of care to the Warks. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I. Background

On August 13, 1995, the Wark family was involved in a fatal automobile accident in the San Juan National Forest. Charles and Shauna Wark, along with their nine-year-old twin daughters Savanah and Lerisa Wark, were passengers in a Ford F-250 pickup truck driven by Charles Banks. They were on Forest Service Road 535, a gravel road that Banks had driven numerous times before. A few hundred feet after passing a sign stating "ROAD NARROWS," Banks rounded a curve in the road and encountered another Ford F-250 pickup traveling in the opposite direction. The road narrowed to less than twenty feet wide, and as the vehicles passed, Banks's truck and horse trailer struck the other truck's flatbed trailer, causing Banks's vehicle to veer off the road and slide 200 feet down a steep embankment and into the Dolores River. None of the truck's occupants was wearing a seatbelt. Lerisa Wark and Charles Banks died in the accident; Charles, Shauna, and Savanah Wark suffered serious injuries, including broken bones, cuts, and bruises.

The accident occurred on a road within a national forest, but which is part of the system of roads of Dolores County. In 1992, the Forest Service and Dolores County had signed a "Forest Road Agreement," which divided responsibilities for the planning,

-2-

coordination, development, operation, and maintenance of Forest Access Road 535, including the site of the accident. Among other duties, the Forest Service agreed to undertake a program of providing and maintaining adequate signs. Title insurance documents, however, show that Cresto Ranches, Inc. owned the road in fee simple. The Forest Service purchased an easement from Cresto Ranches after the accident.

The Warks sued the Forest Service for negligence pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-80, seeking damages of $20 million for each family member. Plaintiffs alleged that the Forest Service had a duty to maintain the road in a safe condition, either because it had an ownership interest in the road or because it had assumed a duty by its actions. They alleged that the Forest Service was negligent in failing to maintain the road and that the dangerous condition of the road, including insufficient posted warnings, caused the accident. The Forest Service disputed these claims and offered an additional defense under the Colorado Recreational Use Statute. Colo. Rev. Stat. § 33-41-101. The district court granted summary judgment for the defendant, finding that because it had no ownership interest in the road and did not enter into any agreements with the owner, it had no duty to the Warks. The district court also dismissed the plaintiffs' common-law negligence claim. The plaintiffs appeal the grant of summary judgment and dismissal of the negligence claim.

## II. Discussion

We review the grant of summary judgment de novo, applying the same standard as

-3-

the district court. Whitesel v. Sengenberger, 222 F.3d 861, 866 (10th Cir. 2000).

Summary judgment is appropriate when there is no genuine issue of material fact,

viewing the evidence in the light most favorable to the nonmoving party. Id. (citing Fed.

R. Civ. P. 56(c)).

The Federal Tort Claims Act (FTCA) allows monetary damages for "personal

injury or death caused by the negligent or wrongful act or omission of any employee of

the Government while acting within the scope of his office or employment." 28 U.S.C.

§ 1346(b)(1). The FTCA applies the law of the place where the alleged negligence

occurred and makes the United States liable to the same extent as a private person under

like circumstances. 28 U.S.C. §§ 1346(b)(1), 2674. Thus, we apply the substantive law

of Colorado, reviewing the district court's determinations of state law de novo. Ayala v.

United States, 49 F.3d 607, 610-11 (10th Cir. 1995).

A. Landowner Liability

The Warks rely on the Colorado Premises Liability Statute, which imposes

specified duties on "landowners." Colo. Rev. Stat. § 13-21-115(1). Cresto Ranches, Inc.,

held title to this property at the time of the accident.[1] Title, however, is not dispositive in

determining who is a "landowner" under the Premises Liability Statute. Perez v. Grovert,

962 P.2d 996, 999 (Colo. Ct. App. 1998).

---

[1] Title insurance records for the property and Cresto Ranches' sale of an easement to the Forest Service after the accident demonstrate this fact.

Instead, "'landowner' includes, without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property." Colo. Rev. Stat. § 13-21-115(1). While the language "without limitation" might suggest a broad meaning, one of the express purposes of the statute is to narrow the preexisting law by "protect[ing] landowners from liability in some circumstances where they were not protected at common law." Id. § 13-21-115(1.5)(e). We therefore interpret "landowner" to be no more expansive than the common law definition. By the terms of the statute, "landowner" includes three types of people: (1) authorized agents; (2) persons in possession; and (3) persons legally responsible for the condition of the property. We find that the Forest Service does not fit any of these categories.

First, the Forest Service was not an "authorized agent" of the titleholder. Cresto Ranches never entered into any agreement with the Forest Service, and the Forest Service never attempted to act on its behalf.

Second, the Forest Service was not a "person in possession." This provision applies to those with title and possession and to non-titleholders with exclusive possession, such as tenants or easement holders who have complete possession and control over the property. Lakeview Ass'n Ltd. v. Maes, 907 P.2d 580, 586, n.10 (Colo. 1995) (en banc); deBoer v. Jones, 996 P.2d 754, 756 (Colo. Ct. App. 2000); Perez, 962 P.2d at 998-99. The Forest Service did not have title, and it was not a tenant or easement

holder. While it is possible that the Forest Service or the county might have been able to obtain an easement over the road, neither attempted to do so until after the accident, when the Forest Service purchased an easement.[2]

Finally, the Forest Service was not a "person legally responsible" for the condition of the property. The Warks argue that the Forest Road Agreement, which imposes certain planning and maintenance duties on the Forest Service, makes the Forest Service "legally responsible." But the Warks fail to cite, nor have we found, any authority in support of their argument that a contract with a nonowner can make someone legally responsible for the condition of property within the meaning of the statute. We decline to adopt such an interpretation of the law, and we agree with the district court's conclusion: "Defendant can not be 'legally responsible' pursuant to Section 13-21-115 on the basis of the Forest Road Agreement because the record owner of the property, Cresto Ranches, Inc., is not a party to the contract." Wark v. United States, No. 98-B-1620, slip op. at 10 (D. Colo. July 3, 2000).

---

[2] The Warks dispute whether there was sufficient evidence to grant summary judgment on this issue. They point to deposition testimony that the Forest Service had an "interest" in the land, that it did not know who owned the land until after the accident, that it could have obtained an easement by prescription, and that the Forest Service would have resisted any attempt to close down the road, as well as evidence impeaching the credibility of one of the defendant's witnesses. Viewing these facts in the light most favorable to the Warks, however, fails to give rise to any reasonable inference that the Forest Service actually possessed the land. Cf. Rea v. Wichita Mortgage Corp., 747 F.2d 567, 573 (10th Cir. 1984) (requiring the nonmoving party to present specific facts demonstrating the existence of a material fact to be tried).

We therefore find that the Forest Service was not a landowner within the meaning of the Colorado Premises Liability Statute and cannot be held liable under the statute.[3]

B.  Assumption of Duty

The Warks also argue that the Forest Service is responsible under the assumed duty (or good samaritan) doctrine because it entered into the Forest Road Agreement with Dolores County.  Under the assumed duty doctrine, "a party may assume duties of care by voluntarily undertaking to render a service."  Jefferson County Sch. Dist. R-1 v. Justus, 725 P.2d 767, 770 (Colo. 1987).  When a party assumes duties, that party is liable for physical harm resulting from the failure to exercise reasonable care.  Id. (citing Resatement (Second) of Torts § 323 (1965)).

For the doctrine to apply, the plaintiff must show that the defendant: (1) "through its affirmative acts or through a promise to act, undertook to render a service that was reasonably calculated to prevent the type of harm that befell the plaintiff"; and either (2) that the plaintiff "relied on the defendant to perform the service"; or (3) "that defendant's undertaking increased plaintiff's risk."  Ayala, 49 F.3d at 613 (citing Justus, 725 P.2d at 771).  Most of the defendant's obligations under the Forest Road Agreement were not "reasonably calculated to prevent the type of harm that befell the plaintiff."  The county took responsibility for most of the maintenance work that could have prevented the

---

[3]Having reviewed the district court's findings de novo, applying the same standards as the district court, we also find that the district court made no impermissible inferences in favor of the Forest Service.

accident. The one exception is the Forest Service's agreement to provide and maintain adequate road signs. Additional warning signs on the road might have prevented the accident.[4]

The Warks have failed to demonstrate, however, that they relied on the Forest Service to provide adequate warnings or that the Forest Service's actions increased their risk. In fact, the Warks could not have relied on the Forest Service because they were not aware of the Forest Road Agreement; nor were they aware that they should not rely upon the actual landowner to maintain the road. As for increased risk, there is no evidence that the Forest Service installed the speed limit sign, the road narrows sign, or any other signs that could have created a danger to the plaintiffs. As noted by the district court, "Plaintiffs have not cited any evidence other than the bare allegations in the complaint indicating that any other maintenance undertaken by Defendant on the section of Forest Service Road 535 at issue here caused the accident." Wark v. United States, No. 98-B-1620, slip op. at 13 (D. Colo. July 3, 2000). Because the Warks did not cite specific facts demonstrating a genuine factual issue to be tried, summary judgment was appropriate. Rea v. Wichita Mortgage Corp., 747 F.2d 567, 573 (10th Cir. 1984).

---

[4]Charles Banks had traversed this road numerous times and was already aware of the road's conditions, so it is unclear whether additional warning signs would have prevented the accident. For purposes of summary judgment, we assume that additional signs could have prevented the accident.

C.  Common-Law Negligence

The Warks also appeal the dismissal of their common-law negligence claim under Rule 12(b)(6).  We review a dismissal under Rule 12(b)(6) de novo.  Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).  The plaintiffs have provided no basis for liability other than landowner status or assumption of duty, and after reviewing the case law, we have found none.  All civil actions brought against landowners in Colorado for injuries caused by the condition of the property are governed by the Colorado Premises Liability Statute.  Casey v. Christie Lodge Owners Ass'n, 923 P.2d 365, 368 (Colo. Ct. App. 1996).  Since we have already held that the Forest Service is not liable here under the Premises Liability Statute or based on an assumption of duty, we hold that the district court was correct in dismissing the Warks' general negligence claim.

Because we agree with the district court that the Forest Service is not liable, we need not reach its defense under the Colorado Recreational Use Statute.

### III.  Conclusion

Having found that the defendants are not liable under the Premises Liability Statute, the assumption of duty doctrine, or common law negligence, we AFFIRM the judgment of the district court.