John W. PIERSON and Wanda L. Pierson, Petitioners,

v.

BLACK CANYON AGGREGATES, INC. and Chauncey Luttrell, Respondents.

No. 01SC161.

Supreme Court of Colorado, En Banc.

May 20, 2002.

As Modified on Denial of Rehearing July 1, 2002.

Woodrow & Roushar, Frank J. Woodrow, Montrose, Colorado, Attorneys for Petitioners.

Younge & Hockensmith, P.C., Earl G. Rhodes, David Dodero, Grand Junction, Colorado, Attorneys for Respondents.

Justice KOURLIS delivered the Opinion of the Court.

In this case, Petitioner John W. Pierson drove over a seventeen-foot embankment into a gravel pit when the roadway on which he was traveling abruptly ended. His vehicle landed on its roof, and he sustained injuries.

The property where the gravel pit was located was owned by Donald C. and Nellie L. Neal, and was under lease to Montrose County. Pierson brought this action against Respondents, Black Canyon Aggregates, Inc. and Chauncey Luttrell, the operators of the gravel pit pursuant to a gravel crushing agreement with Montrose County. Petitioners, John W. Pierson and his spouse, Wanda L. Pierson, asserted that Respondents were liable to them for negligence under the premises liability statute.

Respondents countered that they were not "landowners" under that statute. The trial court granted summary judgment for Respondents, concluding that Montrose County, and not the Respondents, was the party in possession of the property for purposes of the statute and, thus, the landowner. The court of appeals affirmed. *Pierson v. Black Canyon Aggregates, Inc.*, 32 P.3d 567, 569 (Colo.App.2000).

We agreed to grant certiorari on the question of whether the trial court properly construed the meaning of "landowner" under the premises liability statute, § 13–21–115, 5 C.R.S. (2001), and therefore now examine the parameters of that term as defined by the statute.

We read the statute as intending to define and limit the liability of property owners. Such protection is, in our view, available to authorized agents or parties in possession of the property and also to parties legally responsible for the condition of the property or activities conducted on it. Since the protections of the statute are broad-reaching, its responsibilities must be coextensive. Therefore, an independent contractor such as Respondent is a "landowner" for purposes both of the protections and the responsibilities of the statute. Because we determine that the trial court was too narrow in its application of the statutory test, we reverse.

## I. Facts

In 1985 the Neals leased the property on which the gravel pit and the road are located to Montrose County (the County) for mining, excavating, and stockpiling gravel, for a term of twenty years.[1] Under the lease, the County agreed to maintain all roads used by the County on the premises. The lease specifically referred to the public right-of-way designated as 57.50 Road and gave the County the option to fence the right-of-way or place cattle guards across the road at any location. Finally, the County agreed to reclaim all gravel extraction sites pursuant to specified reclamation provisions.

On November 12, 1996, the County and Respondent Black Canyon Aggregates, Inc. entered into an agreement authorizing Respondent to crush gravel for the County at various County-owned or leased gravel pits throughout Montrose County as directed by the County. The agreement provided that the parties intended to create an independent contractor employer relationship and that Respondent should not be considered an agent or employee of the County for any purpose. The County clarified that it was interested only in the results to be achieved and that the conduct and control of the work was to lie solely with Respondent:

> In the performance of the work herein contemplated, [Respondent] is an independent contractor, as above noted, with the authority to control and direct the performance of the details of the work, County being interested only in the results obtained. However, the work contemplated must meet the approval of County's designated agent or representative and shall be subject to County's general right of inspection and supervision to insure the satisfactory completion thereof.

The agreement further gave the County the right to enter the property to correct any dangerous condition:

> The work to be performed under this agreement will be performed entirely at [Respondent's] risk, and [Respondent] assumes all responsibility for the condition of

1. The Neals were not named as defendants in this action and were never alleged to be the landowners for purposes of the statute. Petitioners did not sue Montrose County because of their belief that the Governmental Immunity Act, §§ 24–10–101 to 119, 7 C.R.S. (2001), precluded such suit. Respondents did name the County as a nonparty at fault, which designation was never an issue because of the trial court's disposition of the case.

its tools and equipment used in the performance of this Memorandum. [Respondent] agrees to indemnify County for any and all liability or loss arising in any way out of the performance of this Memorandum. Should County determine that any action being undertaken at respective pits endangers or may endanger the health, safety, welfare, or other normal operations of County, any of its subcontractors, or citizens, County may enter said pit for the purposes of remedying the same, and [Respondent] agrees to pay all reasonable costs incurred by County under such action.

Pursuant to an addendum to the agreement the County even reserved the right to determine "the depth of excavation and approximate location of gravel to be excavated for crushing." Finally, the agreement specified that the County would be responsible for removing overburden and for reclaiming each pit after crushing operations ceased.

The County did not assign its lease of the gravel pits to Respondent. However, the gravel crushing agreement did require Respondent to comply with all leasehold interest agreements at each pit site.

On April 23, 1997, Petitioner John W. Pierson was driving in the area of the pit in question to collect payment for a tractor he had recently sold. On his out-bound trip, he drove around the pit. On his return trip, Petitioner decided to take an alternate route, Road 57.50,[2] which runs through the gravel pit. At the gravel pit, Road 57.50 ended in a seventeen-foot drop-off caused by years of excavation and mining activities. Petitioner drove over the bank. Petitioner's vehicle landed on its roof, and he sustained injuries as a result of the accident.

According to undisputed facts before the trial court, the County had operated the pit for a number of years. Respondent had mined the pit on several occasions over the years. Most recently, Respondent had been on the site crushing gravel for less than a month.

On November 6, 1997, Petitioners filed a complaint[3] against Respondents, Black Canyon Aggregates, Inc. and its owner, Chauncey Luttrell. Petitioners did not name the County as a defendant in the action. Respondents filed a motion for summary judgment asserting, in pertinent part, that the premises liability statute controlled liability and that they were not landowners under the statute because the County was in possession of the gravel pit. In response, Petitioners agreed that the premises liability statute was controlling, but asserted that Respondents were landowners under the terms of the statute because they were, in fact, in possession of the property pursuant to the agreement between Respondent Black Canyon Aggregates and the County.

The trial court found that the County, and not Respondents, was the landowner within the definition provided by section 13–21–115. Specifically, the trial court determined that: (1) the County was the lessee of the property; (2) the County did not assign the lease to Respondent; (3) the County retained the obligation to repair fences and the right to erect gates; (4) the County and Respondent specifically agreed that they had an employer-independent contractor relationship; (5) the County had the right to inspect the premises, to make safety improvements, to generally supervise the work and condition of the pit, and to dictate the location and depth of the excavation; and (6) the County was responsible for removing the overburden and reclaiming the pit. Thus, the trial court determined that Respondents had no liability for Petitioner's injuries under a premises liability theory. The trial court therefore

---

**2.** Although Petitioners contend that Road 57.50 is a county road, the record contains the affidavit of the road foreman for Montrose County swearing that the road is not a county road; his affidavit states that the road is private property, specifically, an old driveway leading to a vacant house.

**3.** Initially, Petitioners asserted claims for negligence under the premises liability statute, breach of contract under a third-party beneficiary theory, negligence for failing to name Montrose County as an additional insured on the liability insurance policy, loss of consortium, and punitive damages. Because of the procedural posture of the case before us, we address only the premises liability statute claims.

granted summary judgment on Petitioners' premises liability claim.

On appeal, the court of appeals affirmed. *Pierson v. Black Canyon Aggregates, Inc.*, 32 P.3d 567, 569 (Colo.App.2000). The court of appeals held that when the County originally leased the gravel pit, it was the party in possession of the property. *Id.* It noted that Respondents were not granted exclusive possession of the pit, as might have been the case with a lessee; rather, they had only a contractual right to mine, excavate, and stockpile gravel under the County's supervision. *Id.* It held that Respondents were not solely responsible for the condition of the gravel pit and were not in possession of the premises. Finally, it concluded that "[a]bsent some type of ownership or leasehold interest in the property, a party does not fall within the definition of a 'landowner' for purposes of the premises liability statute." *Id.* at 570. Therefore, the court of appeals determined that the trial court properly granted summary judgment because Respondents could not be held liable under the statute. Petitioners sought certiorari on the proper construction of the term "landowner" under the statute.

## II. Standard of Review

■ The standard for review of the trial court's grant of summary judgment is so well-established as to be rote; however, we set it forth in order to frame the question we must address. Summary judgment is appropriate when the pleadings and supporting documents demonstrate that no genuine issue as to any material fact exists and that the moving party is entitled to summary judgment as a matter of law. *Martini v. Smith*, 42 P.3d 629, 632 (Colo.2002) (citing *Vail/Arrowhead, Inc. v. Dist. Court*, 954 P.2d 608, 611 (Colo.1998)). Appellate courts review a trial court's order granting or denying a motion for summary judgment de novo. *Vail/Arrowhead, Inc.*, 954 P.2d at 611; *see also Joe Dickerson & Assocs. v. Dittmar*, 34 P.3d 995, 1003 (Colo.2001) (holding that an appellate court reviews a trial court's granting of a summary judgment motion de novo because it is a question of law); *Feiger, Collison & Killmer v. Jones*, 926 P.2d 1244, 1250 (Colo.1996) ("All summary judgments are rulings of law in the sense that they may not rest on the resolution of disputed facts. We recognize this by our *de novo* standard of reviewing summary judgments.") (internal quotation marks omitted).

## III. The Premises Liability Statute

■ The law of premises liability in Colorado has had something of a checkered history. In 1971 this court overruled the common-law principles of landowner liability that had turned on the status of the person entering the property, because the court perceived those principles to have occasioned harsh rulings as a matter of law against plaintiffs. *Mile High Fence Co. v. Radovich*, 175 Colo. 537, 542–45, 489 P.2d 308, 312–13 (1971). Instead, the court applied general negligence law, with one factor being the status of the plaintiff's entry onto the land. In 1986 the general assembly enacted the predecessor statute to the one we now consider, in an attempt to reinstate the common-law rules of liability. *See* ch. 109, sec. 1, § 13–21–115, 1986 Colo. Sess. Laws 683. That statute succumbed to an equal-protection challenge because this court determined that it afforded less protection to invitees than to licensees (contrary to the common law) and was not justified either by logic or by history. *Gallegos v. Phipps*, 779 P.2d 856, 862 (Colo. 1989). Again, the general assembly responded, this time by substantially amending the statute to the version we now consider. *See* ch. 107, sec. 1, § 13–21–115, 1990 Colo. Sess. Laws 867. Interestingly, throughout the history of the statute, the language defining "landowner" has remained unchanged.

■ We look then to the specific language of the premises liability statute to answer the question before us. Our role in construing the meaning or scope of a statutory term is to give effect to the intent of the legislature. *Lakeview Assocs. v. Maes*, 907 P.2d 580, 584 (Colo.1995). In so doing, we first examine the language of the statute itself. *Id.* If the statutory language is unambiguous, there is no need to resort to interpretive rules of statutory construction. *Resolution Trust Corp. v. Heiserman*, 898 P.2d 1049, 1054 (Colo.1995) ("[I]f courts can give

effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said."). We will construe words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, accordingly. *Id.* We presume that the legislature acted with full knowledge of relevant judicial precedent on the subject. *Id.* Finally, if a statute is ambiguous, we look to a variety of other factors, including legislative history. § 2-4-203, 1 C.R.S. (2001).

Section 13-21-115(1) provides, "For the purposes of this section, 'landowner' includes, without limitation, an authorized agent or a person in possession of real property and a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property."

The general assembly identified the purpose of the premises liability statute as promoting "a state policy of responsibility by both landowners and those upon the land as well as [assuring] that the ability of an injured party to recover is correlated with his status as a trespasser, licensee, or invitee." § 13-21-115(1.5)(a). The statute intends "to create a legal climate which will promote private property rights and commercial enterprise and will foster the availability and affordability of insurance." § 13-21-115(1.5)(d). It further provides that its intent is "to protect landowners from liability in some circumstances when they were not protected at common law and to define the instances when liability will be imposed in the manner most consistent with the policies ... of this subsection (1.5)." § 13-21-115(1.5)(e).

The overriding purpose of the premises liability statute is to clarify and to narrow private landowners' liability to persons entering their land, based upon whether the entrant is a trespasser, licensee, or invitee. § 13-21-115(1.5). General negligence law would not provide such protection. To

whom, then, did the general assembly intend to extend that protection?

Clearly, the "landowner" entitled to take refuge in the statute need not be the titled owner of the property. Rather, the general assembly defined "landowner" quite broadly to include, without limitation [4]: (i) an authorized agent or person in possession of the land; and (ii) a person legally responsible for the condition of the real property or for the activities conducted or circumstances existing on the property.

Under the first portion of that definition, we concentrate here on the meaning of "a person in possession of real property." § 13-21-115(1). Section 13-21-115 itself does not provide a definition of "possession" of real property. Respondents argue that to satisfy the possession element of the test, a person or entity must be in exclusive possession of the property; they assert that they were not in exclusive possession of the gravel pit.

Indeed, we have sometimes defined "possession" as meaning "a general holding and occupancy, complete dominion over the property to the exclusion of others." *Concord Corp. v. Huff,* 144 Colo. 72, 78, 355 P.2d 73, 76 (1960); *see also* 1 Herbert Thorndike Tiffany, *Real Property* § 20 (3d ed. 1939) ("[O]ne is in possession of land when he is in occupation thereof, with the intention, actually realized, of excluding occupation by others, or when, although not in actual occupation, he claims the right of exclusive occupation, and no person is in occupation opposing his claim.").

On the other hand, the Restatement (Second) of Torts § 328E (1965) does not require exclusive possession, but rather provides that a possessor of land is:

(a) a person who is in occupation of the land with intent to control it or

(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or

---

4. The general assembly added "without limitation" specifically to ensure that lessees and renters were included in the definition of "landowner." House floor debate on H.B. 1205, Feb. 26, 1986.

(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

Both this court and the court of appeals have previously addressed this question primarily in a context in which the owner of the property seeks to shift liability onto an operator or lessee. For example, in *Springer v. City & County of Denver*, 13 P.3d 794 (Colo. 2000), we noted that where a landowner employs an independent contractor to do work on the land, the landowner is nonetheless subject to the same liability to others for physical harm caused by an unsafe condition as if the landowner completed the work itself. *Id.* at 802 (citing Restatement (Second) of Torts § 422 (1965)). In *Springer*, we held that a landowner may not delegate to an independent contractor the obligation to exercise reasonable care to protect invitees and licensees against dangers within the scope of the premises liability statute. *Id.* at 804.

Similarly, in *Jules v. Embassy Properties, Inc.*, 905 P.2d 13, 15 (Colo.App.1995), the court of appeals concluded that a landowner cannot avoid liability by hiring an independent contractor to manage and maintain the property when the landowner does not surrender complete possession of the property, but rather retains the right to collect rents and manage the property. And, in *Kidwell v. K–Mart Corp.*, 942 P.2d 1280, 1282 (Colo. App.1996), the court of appeals concluded that a landowner in possession of property may not delegate to an independent contractor the obligation to maintain the premises in a safe condition for invitees.

On the other hand, when a landowner transfers complete control of the premises to a lessee, that landowner is no longer a person in possession for purposes of the statute. *See Perez v. Grovert*, 962 P.2d 996, 999 (Colo. App.1998).

Hence, in the context in which the owner of the property disputes his or her liability for the actions of an alleged tortfeasor on the property, the question of whether that owner transferred exclusive possession or retained some interest is a relevant inquiry. Here, however, we are not addressing whether the County remains liable—which would be the corollary to the question presented in our prior cases.[5] Rather, we must determine whether these Respondents, as alleged tortfeasors, have a sufficient possessory interest to qualify as a "landowner" at all under the statute.

■ In this context, we determine that exclusive possession is not the pivotal inquiry. We now hold, based on the clear statutory language, that as to that portion of the definition, a "landowner" is any "person in possession of real property" and that such possession need not necessarily be to the exclusion of all others. To the extent that the trial court and court of appeals viewed exclusive possession as being an element of the statute, we disagree.

Furthermore, the second definition of a landowner under the statute directs an alternative inquiry under which a "landowner" can be someone who is legally responsible for the condition of the property or for activities conducted or circumstances existing on the property. That language could be interpreted two ways. It could be read to mean that a "landowner" is someone who could be held legally liable for the alleged tort, or it could mean that a "landowner" is someone who is legally conducting activity or creating a condition on the property and therefore responsible for that activity or condition.

The first reading would be circular and absurd. It would conclusively define as a "landowner" anyone with legal liability to an entrant on property. It could even include a trespasser on private property who causes damage to another person so long as that trespasser could be held liable for the injury. It is our duty to avoid interpretations that either render language of a statute meaningless or absurd, *AviComm, Inc. v. Colo. Pub.*

---

5. In *Perez*, 962 P.2d at 997, the plaintiff named both the owner of the premises and the lessee as defendants. Similarly, in *Kidwell*, 942 P.2d at 1282–83, the owner of the property was allowed to designate the independent contractor as a nonparty at fault and argue that any settlement reached with that independent contractor would be offset against a verdict. In *Jules*, 905 P.2d at 15, the defendant-owner of the property named the independent contractor as a nonparty at fault, and the court of appeals did not reach the propriety of that designation.

*Utils. Comm'n,* 955 P.2d 1023, 1031 (Colo. 1998), and our further duty to interpret a statute in light of the express intent of the legislature. Given that the general assembly intended to "promote a state policy of responsibility by both landowners and those upon the land," we conclude that providing the protections of the statute to a defendant who was himself without any legal right to be on the land would be inapposite.

Rather, we adopt the second reading, such that the statute offers its protection to a person who is legally conducting an activity on the property or legally creating a condition on the property. Such a person or entity is "responsible" for the activity or condition and, therefore, prospectively liable to an entrant onto the property. The common definition of "responsible" is: "[a]nswerable, accountable, (to); liable to be called to account; having authority or control; being the cause." II *New Shorter Oxford English Dictionary* 2567 (1993). Therefore, the focus becomes whether the defendant is someone who is legally entitled to be on the real property and whether that defendant is responsible for creating a condition on real property or conducting an activity on real property that injures an entrant. In our view, such focus properly serves the intent of the statute by: (i) limiting the protection of the statute to a person or entity with legal authority to be on the property; and (ii) placing prospective liability with the person or entity that created the condition or conducted the activity on the real property that, in turn, caused injury to someone. Of course, the cause of action must arise out of an injury occurring on the real property of another and by reason of the condition of the property or activities or circumstances directly related to the real property itself in order to be within the rubric of the statute. *See* § 13–21–115(2).

In summary, then, we understand the general assembly to intend a broad definition of landowners who can claim the protections of the premises liability statute. Those landowners include individuals or entities who are authorized agents or persons in possession, and include individuals or entities who are legally conducting an activity on the property or legally creating a condition on the property. [6]

Thus, we answer the question on certiorari by holding that a "landowner" for purposes of the statute can certainly be an independent contractor such as these Respondents. More specifically, when we apply our expansive reading of the statute to the trial court's findings of fact, we conclude that, for purposes of summary judgment, Respondents were sufficiently in possession to fit the definition of "landowners" under section 13–21–115(1), and were also persons legally conducting an activity on the property that allegedly injured Pierson. [7] Therefore, we reverse the trial court's grant of summary judgment in favor of Respondents as to that issue.

## IV. Conclusion

Accordingly, we reverse the court of appeals and return this case to the trial court for further proceedings.

6. We acknowledge that, in *Wark v. United States,* 269 F.3d 1185 (10th Cir. 2001), in construing section 13-21-115 the Tenth Circuit reached the opposite result. *Id.* at 1189. In that case the court declined to interpret "landowner" more broadly than its common law definition. *Id.* at 1188. That court surmised that the general assembly sought to narrow the preexisting law by offering protection to landowners in circumstances where they were not protected at common law and therefore chose a narrow definition of "landowner." We agree with the Tenth Circuit's explanation of the purpose of the statute, but have concluded that such purpose argues for an expansive definition of "landowner," as demonstrated by the legislative intent and the terms of the statute itself. §13-21-115; House floor debate on H.B. 1205, Feb. 26, 1986.

7. Whether Respondents were actually responsible for the precise situation that injured Pierson is a question for the trier of fact on remand. By reversing the summary judgment, we are merely concluding that Petitioners set forth sufficient facts to create a dispute.