**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**January 20, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DILLON COMPANIES, INC.,
d/b/a KING SOOPERS, INC.,

    Plaintiff-Appellant,

v.

HUSSMANN CORPORATION,

    Defendant-Appellee.

No. 03-1493

(D.C. No. 01-M-931)

(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, McKAY** and **EBEL**, Circuit Judges.

This is a diversity action filed pursuant to 28 U.S.C. § 1332. Plaintiff

Dillon Companies, Inc., doing business as King Soopers, Inc. ("King Soopers"),

filed suit against Hussmann Corporation ("Hussmann") for negligence as a result

of a fire that occurred during the remodeling of a King Soopers store. After a

seven-day trial, the jury returned a verdict for King Soopers in the amount of

$3,819,212.00. The jury also assessed 35% comparative fault to King Soopers,

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

which reduced the judgment entered in favor of King Soopers to $3,243,148.22.

King Soopers appeals, claiming that the district court erred in permitting the jury to consider its comparative negligence. King Soopers also contends that the district court erred in excluding evidence regarding leasehold improvements. We affirm.

I.

This negligence suit arose from a fire in King Soopers' Store #48 in Greenwood Village. King Soopers designed the grocery store in 1978 and remodeled it in 1987. Although an investment company owned the building, King Soopers maintained exclusive possession and control as a lessee since 1978.

In 2000, King Soopers was remodeling the store, and it hired Hussmann as the commercial refrigeration contractor. Hussmann employees, including Dan Anderson, used acetylene oxygen torches to braze refrigeration pipes in the roof.

On March 22, 2000, Anderson accidentally ignited some combustible paper-faced insulation. Anderson attempted to put the fire out, but his efforts were to no avail. The flames spread across the roof in a rolling fire, the roof collapsed, and the building was destroyed. A rolling fire suggests that "a large amount of combustibles ignite[d] in a progressive motion." Aplee. App. at 109.

As a result of the fire, King Soopers sued Hussmann, claiming negligence and seeking damages. Hussmann responded by alleging that King Soopers was

-2-

also negligent and that its negligence should be compared to reduce Hussmann's potential liability.

At trial, Hussmann argued that King Soopers negligently installed combustible insulation and failed to take fire preventative measures, which created a fire hazard and caused the fire to spread rapidly. Hussmann asserted six grounds to support King Soopers' comparative negligence: (1) installing combustible paper-faced insulation; (2) failing to properly cover the combustible insulation; (3) leaving old combustible ceiling tiles above the drop ceiling; (4) failing to utilize draft stops in the attic, even though the insulation made the store combustible; (5) failing to install fire sprinkler heads above the drop ceiling; and (6) violating the building codes.

When it built the store, King Soopers installed combustible paper-faced insulation in the roof, even though the original specifications called for foil-faced insulation, which is the most fire resistant material. Several witnesses testified that the presence of combustible insulation in the roof would make it easier to start a fire, and that a fire would burn faster once started. Deputy Fire Marshal Charles Graham, who investigated the fire, testified that the presence of paper-backed insulation was why Anderson was unable to extinguish the fire with a five-gallon bucket of water, wet rags, and two fire extinguishers. The Uniform Building Code now prohibits combustible paper-backed insulation, and the new

store could not use it.

After installing the combustible insulation in the roof, King Soopers left it exposed, despite manufacturer's warnings printed on the insulation that it was "combustible and should not be left exposed." Aplee. App. at 87. Several witnesses testified that King Soopers should have covered the insulation. If King Soopers covered the insulation with dry wall, thirty minutes would have elapsed before the insulation ignited from heat transfer.

Moreover, King Soopers did not install any draft stops in the store, even though the open area between the roof and the drop ceiling measured 50,000 square feet. Draft stops are physical walls that seal off areas of the roof, which should confine any fires that occur to a smaller area. Graham testified that draft stops could have contained the fire within a smaller area and prevented the loss of the entire store.

King Soopers installed fire sprinklers below the drop ceiling, but it did not install any above the drop ceiling. Because this fire occurred above the drop ceiling, the sprinkler system did not activate during the fire. Robert Letcher, who is King Soopers' Director of Facility Engineering, and Graham testified that the building was fully sprinklered because all of the occupied space had sprinklers. John Schumacher, who is a certified fire investigator, testified that sprinklers above the drop ceiling would have sensed the fire, assisted in slowing the fire,

-4-

and "probably would have put the fire out." Aplee. App. at 83. In the original specifications, the store was supposed to have an automatic sprinkler system both above and below the drop ceiling.

Finally, King Soopers installed a second, lower drop ceiling when it remodeled the store in 1987. However, King Soopers did not remove the combustible tiles from the old drop ceiling. Graham and Schumacher testified that the presence of the old ceiling tiles contributed to the fire.

Hussmann presented expert testimony from Roger Craddock, who investigates large accidents and fires. Craddock testified on five matters:

(1) The paper-backed insulation was highly flammable and should have been covered;

(2) King Soopers violated the 1976 Uniform Building Code by installing paper-backed insulation;

(3) The Building Code required draft stops or sprinkler heads above the drop ceiling because the paper-faced insulation made the building combustible;

(4) The original specifications required foil-faced insulation and sprinkler heads above the drop ceiling, but they were changed most likely to cut costs;

(5) The building would not have been lost if it was built with foil-faced insulation, draft stops, or sprinklers above the drop ceiling.

II.

In a diversity action, we apply the law of the forum state, which is Colorado. Hjelle v. Mid-State Consultants, Inc., 394 F.3d 873, 877 (10th Cir.

2005).

*Comparative Negligence*

a. Evidence to Support Instruction.

The district court denied King Soopers' motion to strike Hussmann's comparative negligence defense, stating: "Here, the jury can find from the evidence that's in this case that this fire would not have had the disastrous . . . consequences if there had been reasonable care in the manner in which this building was designed and constructed." Aplee. App. at 1556. King Soopers appeals from this ruling, contending that the district court abused its discretion because there was insufficient evidence to support the comparative negligence instruction.

We review the district court's decision to give a particular jury instruction for abuse of discretion. Allison v. Bank One - Denver, 289 F.3d 1223, 1241 (10th Cir. 2002). "Under federal law, an instruction is properly given if supported by competent evidence; only where there is sufficient evidence to support an issue or theory is the party offering an instruction entitled to have the instruction given." Brownlow v. Aman, 740 F.2d 1476, 1490 (10th Cir. 1984); see also Thompson v. United States, 223 F.3d 1206, 1210 (10th Cir. 2000).

Under Colorado law, comparative negligence is an affirmative defense to the plaintiff's negligence action. E.g., Harris v. Ark, 810 P.2d 226, 231 (Colo.

1991) (en banc). Colorado's comparative negligence statute, § 13-21-111, provides in relevant part:

> (1) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made.

Colo. Rev. Stat. § 13-21-111(1).

Comparative negligence rules apply only when the evidence "would substantiate a finding that both parties are at fault." Powell v. City of Ouray, 507 P.2d 1101, 1105 (Colo. Ct. App. 1973). Colorado's comparative negligence statute requires a jury to "apportion the relative percentages of fault attributable to the plaintiff and the defendant." Huntoon v. TCI Cablevision, Inc., 969 P.2d 681, 687 (Colo. 1998) (en banc). Comparative negligence ensures that "no party shall be responsible for more than its share of the losses [and] that each shall account for its share." Painter v. Inland/Riggle Oil Co., 911 P.2d 716, 719 (Colo. Ct. App. 1995), aff'd, 925 P.2d 1083 (Colo. 1996) (en banc). In comparative fault, the plaintiff "has the duty to act as a reasonably prudent person by avoiding undue risk of harm to himself." Fay v. Kroblin Refrigerated Xpress, Inc., 644 P.2d 68, 70 (Colo. Ct. App. 1981).

After review of the evidence presented, we conclude that the district court

did not abuse its discretion in instructing the jury on comparative negligence. There was sufficient evidence for the jury to find that both Hussmann and King Soopers were at fault for the fire that destroyed the building. The evidence established that Anderson almost had the fire out, but then the fire spread in a rolling fashion because of the presence of the combustible insulation and old ceiling tiles. King Soopers built the store with combustible insulation without either draft stops or sprinklers above the drop ceiling. Several witnesses testified that the presence of draft stops or sprinklers above the drop ceiling could have prevented the loss of the building. Graham and Schumacher testified that combustible insulation should be covered with dry wall, but King Soopers left its insulation exposed despite manufacturer's warnings printed on the insulation. Michael Bray, who is King Soopers' architect, admitted that, if the change in insulation made the building combustible, the 1976 Uniform Building Code required the use of draft stops and sprinklers above the ceiling. Craddock testified that the store violated the building code because it had combustible insulation without either draft stops or sprinklers. Because there was ample evidence presented that would support a jury finding that both parties were at fault for the loss of the building, the district court did not abuse its discretion in submitting the comparative negligence instruction to the jury.

b.  Duty to Support Instruction.

King Soopers claims that the district court erred in submitting comparative negligence to the jury because (1) it owed no duty to Hussmann, and (2) it could not have breached a duty because it was a tenant in the building rather than the owner.

King Soopers contends that the district court erred in instructing on comparative negligence because King Soopers owed no duty to Hussmann.  While King Soopers may not have owed a direct duty to Hussmann, it did have a general duty to exercise reasonable care.  In cases where comparative negligence applies, the plaintiff has a "duty to protect oneself from unreasonable risk, and to act as a reasonably prudent person."  Powell, 507 P.2d at 1105; see also Burr v. Green Bros. Sheet Metal, Inc., 409 P.2d 511, 516 (Colo. 1966) (imposing on plaintiff a duty to exercise care required of a reasonably prudent person under the circumstances).  Thus, King Soopers had a duty to protect itself from unreasonable risk:

> Negligence involves the violation of a duty or an obligation of another; contributory negligence does not affect a duty but embraces an undue risk of harm to oneself.  The true measure of conduct required of the plaintiff, is what would an ordinary prudent person have done under the circumstances as they then appeared to exist.

Matt Skorey Packard Co. v. Canino, 350 P.2d 1069, 1071 (Colo. 1960) (per curiam).

-9-

If a plaintiff does not have a duty to exercise care, then the comparative negligence instruction is improper.  Wark v. McClellan, 68 P.3d 574, 580-81 (Colo. Ct. App. 2003).

King Soopers relies on a line of Colorado cases involving the failure to wear seat belts or motorcycle helmets to support its contention that it had no duty and that the district court should not have instructed the jury on comparative negligence.  King Soopers reasons that because the failure of an injured motorist to wear a seat belt does not constitute comparative negligence, neither does its conduct.  However, these cases are limited to the failure to wear seat belts or motorcycle helmets, and they are inapplicable here.  E.g., Dare v. Sobule, 674 P.2d 960, 963 (Colo. 1984) (en banc) (motorcycle helmet); Churning v. Staples, 628 P.2d 180, 181-82 (Colo. Ct. App. 1981) (seat belt).  Notably, the Colorado courts and legislature have not extended the seat belt exception to other types of pre-accident negligence.

King Soopers invites this court to apply the seat belt exception to the facts of this case.  King Soopers, however, offers no Colorado authority for such an extension, which appears contrary to Colorado cases that impose "a duty [upon plaintiff] to protect oneself from unreasonable risk, and to act as a reasonably prudent person."  Powell, 507 P.2d at 1105.

King Soopers cites Burt v. Beautiful Savior Lutheran Church, 809 P.2d

-10-

1064 (Colo. Ct. App. 1990), as support for its argument that a property owner's actions that contributed to the damages claimed do not constitute contributory negligence. But King Soopers misreads the Burt case, which involved both trespass and negligence claims. The Colorado Court of Appeals held that, "even if refusal to give a comparative negligence instruction was error as to the negligence theory, since the jury also found for plaintiffs on trespass, the verdict can be upheld on the trespass theory alone." Burt, 809 P.2d at 1067. Contrary to King Soopers' view of the case, the Burt court acknowledged that it is proper to consider a plaintiff's own negligent action when determining liability in a negligence action brought by the plaintiff.

King Soopers also argues that it could not have breached a duty because it was a tenant, and not the owner, of the building. This assertion misstates Colorado law on premises liability. In Colorado, King Soopers is a "landowner" for purposes of determining premises liability. See Colo. Rev. Stat. § 13-21-115(1); Wark v. United States, 269 F.3d 1185, 1188 (10th Cir. 2001) (stating that Section 13-21-115(1) applies to "tenants . . . who have complete possession and control over the property"). Even as a lessee, King Soopers was included in the definition of a "landowner" and subject to the statute governing premises liability. See Pierson v. Black Canyon Aggregates, Inc., 48 P.3d 1215, 1219 n.4 (Colo. 2002) (en banc) ("The general assembly added without limitation specifically to

-11-

ensure that lessees and renters were included in the definition of landowner.") (internal quotation marks omitted).

c.  Expert Witness Craddock.

King Soopers also contends that the district court erred in admitting Craddock's expert testimony because he was not qualified as an expert.  In response, Hussmann asserts that King Soopers failed to object to Craddock's qualifications at trial, and that King Soopers waived appellate review because it cannot show plain error.

In this case, King Soopers did not challenge Craddock's qualifications as an expert witness during his testimony or before trial.  Nor did it file a motion in limine to exclude Craddock's testimony.  King Soopers asserts that it objected at least five times during Craddock's testimony.  But none of these objections pertained to Craddock's qualifications as an expert.  "The specific ground for reversal of an evidentiary ruling on appeal must be the same as that raised at trial."  Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1331 (10th Cir. 1984).  King Soopers' objections on other grounds did not preserve an objection to Craddock's qualifications for appellate review.  See McKenzie v. Benton, 388 F.3d 1342, 1350 (10th Cir. 2004) (refusing to treat an objection for relevance as one for qualification), cert. denied, 125 S. Ct. 2294 (2005).

King Soopers claims that it challenged Craddock's qualifications in its

motion to strike Hussmann's comparative negligence defense. In its motion to strike, King Soopers maintained that the only basis for the comparative negligence claim was Craddock's testimony and he was not qualified.[1] To the extent that King Soopers' motion to strike the comparative negligence claim challenged Craddock's qualifications, this was not timely. See Macsenti v. Becker, 237 F.3d 1223, 1230-31 (10th Cir. 2001) (requiring objection at the time of witness' testimony and applying plain error, even though the defendant raised his argument in a motion to strike at the close of evidence).

As a result of King Soopers' failure to challenge Craddock's qualifications before trial or when he testified, we review this issue for plain error. See Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 n.2 (10th Cir. 2000). "To constitute plain error, the district court's mistake must have been both obvious and substantial." Cartier v. Jackson, 59 F.3d 1046, 1050 (10th Cir. 1995). "The plain error exception in civil cases has been limited to errors which seriously affect the fairness, integrity, or public reputation of judicial

_____

[1] The district court denied King Soopers' motion to strike because "this isn't the type of comparative fault where you have to have an expert, like medical negligence cases, to support it." Aplee. App. at 156. Because King Soopers never objected to Craddock's qualifications during his testimony, the district court did not make any findings regarding his qualifications. However, we "assume that the district court performs such an analysis *sub silentio* throughout the trial with respect to all expert testimony." Macsenti v. Becker, 237 F.3d 1223, 1232 (10th Cir. 2001) (internal quotation marks omitted).

-13-

proceedings." McEwen v. City of Norman, Okla., 926 F.2d 1539, 1545 (10th Cir. 1991) (internal quotation marks omitted).

King Soopers complains that Craddock is not qualified because his educational background is in civil engineering, and he is not an architect, structural engineer, fire protection engineer, or certified fire investigator. A person may be qualified "as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. R. 702; Graham v. Wyeth Labs., 906 F.2d 1399, 1408 (10th Cir. 1990) (stating that an expert is qualified when he possesses "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for the truth") (internal quotation marks omitted). King Soopers cites no authority for its argument that only architects, structural engineers, fire protection engineers, or certified fire investigators can provide expert testimony regarding the origin of a fire. Our ruling in Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2004), which affirmed the admissibility of expert testimony from a fire investigator, a chemical engineer, and an accident investigator, is support for the district court's ruling in the present case. See id. at 1235.

Further, Craddock was qualified as an expert under Rule 702. Craddock is a consulting engineer for Engineering Systems, Inc., which investigates accidents and fires. Craddock described his speciality as "the evaluation of very large

-14-

fires." Aplee. App. at 121. For three years, Craddock investigated a fire at the MGM casino that spread rapidly from a restaurant where the sprinklers had been removed. In this case, Craddock's primary role was to determine why "this particular fire had got out of hand and spread so rapidly and ended up basically destroying this particular structure." Id. at 128. Craddock has an undergraduate degree in civil engineering, and he has taken additional courses in construction materials. Craddock has performed tests on construction materials, including fire testing involving different types of insulation, and evaluating the sufficiency of sprinkler and fire alarm systems. Craddock has experience in designing and evaluating sprinkler systems and interpreting building codes. He has testified as an expert in Colorado state and federal courts. King Soopers has not established that the admission of Craddock's expert testimony constituted plain error.

King Soopers also maintains that Craddock was not qualified to render expert opinion in this matter because he did not have an engineering license in Colorado. King Soopers submits that Craddock is required to be licensed as an engineer in Colorado, see Colo. Rev. Stat. § 12-25-101, presumably because he worked as a consultant and testified as an expert in this case. However, King Soopers has not cited any authority requiring engineers who are consultants or expert witnesses to obtain an engineering license in Colorado. Nor has King Soopers cited any cases concluding that an expert with an engineering background

-15-

was not qualified to testify because he was not licensed in the state where the trial occurred. While Craddock was not a licensed engineer in Colorado, he was licensed in numerous other states. Craddock was qualified to testify as an expert.

Moreover, the district court afforded King Soopers ample opportunity to cross-examine Craddock about his expert opinion. See McKenzie, 388 F.3d at 1351 (affirming admission of expert testimony and noting that plaintiff had an opportunity to cross-examine the witness); Black v. M & W Gear Co., 269 F.3d 1220, 1231 (10th Cir. 2001) (holding that no plain error occurred in admitting expert testimony and observing that the defendants cross-examined the expert). Any deficiencies in Craddock's method or theories were proper fodder for cross examination. King Soopers cross-examined Craddock extensively.

Finally, King Soopers argues that the district court erred in admitting Craddock's testimony because Craddock relied on the work of certified fire investigators in his office. But King Soopers' argument that Craddock relied on opinions of another goes to the weight, not the admissibility, of the evidence. See Ferrara & DiMercurio v. St. Paul Mercury, Ins. Co., 240 F.3d 1, 9 (1st Cir. 2001). King Soopers has failed to establish that the district court's admission of Craddock's expert testimony was plain error.

*Leasehold Improvements*

Next, King Soopers appeals the district court's exclusion of improvements

in determining damages. King Soopers advances three arguments: (1) that the lease agreement expressly vests ownership in the improvements in the lessee; (2) that even in the absence of the lease agreement, it owned the improvements under Colorado law; and (3) that Generally Accepted Accounting Principles ("GAAP") demonstrate that it was the owner of the improvements. On appeal, King Soopers asserts that the improvements were worth $967,469.62.

We review the district court's exclusion of evidence for abuse of discretion. Hidalgo v. Fagen, Inc., 206 F.3d 1013, 1020 (10th Cir. 2000). Also, this court reviews the failure to give a jury instruction for abuse of discretion. Allison, 289 F.3d at 1241.

At trial, former CFO Ronald Warren testified that King Soopers owned the improvements that King Soopers made to the store. The portion of the lease included in the record states that upon termination of the lease, the title in the improvements "shall become" property of the lessor. Aplt. App. at 28. Warren testified that the lease had not terminated or expired as of the date of the fire. But King Soopers did not introduce the lease as an exhibit at trial, and it did not introduce evidence of the date of termination.

On appeal, Hussmann argues that King Soopers failed to object to the district court's exclusion of improvements. Our review of the record confirms that King Soopers did object on two grounds: (1) that it owned the improvements

under Colorado law; and (2) that the improvements would have zero net book value under GAAP upon termination. It does appear, however, that King Soopers is arguing for the first time on appeal that the lease explicitly provided that it owned the leasehold improvements and that the lease entitles King Soopers to recover damages for the value of the improvements.

King Soopers' reliance on the lease is made difficult because we have only a portion of the lease in the record.[2] Although King Soopers did not introduce the lease as an exhibit at trial, Hussmann appended part of the lease agreement to its trial brief submitted to the district court. See Fed. R. App. P. 10 (defining the "record on appeal" to include "the original papers and exhibits filed in the district court"); Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1081 n.7 (10th Cir. 2001) (noting that summary judgment exhibits and exhibits at trial were part of the record on appeal).

This court will not consider a new theory on appeal, even one that "falls under the same general category as an argument presented at trial or presents a theory that was discussed in a vague and ambiguous way" at trial. Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc., 100 F.3d 792, 798-99 (10th Cir. 1996) (internal quotation marks omitted), op. am. on other grounds, 103 F.3d 80

---

[2] Therefore, any reference to "the lease" which appears in the analysis that follows must by necessity refer only to that portion of the lease that is contained in the record.

(10th Cir. 1996). "[A] party must present the legal basis of the claim to the district court clearly and explicitly. . . . [V]ague, arguable references to [a] point in the district court proceeding do not . . . preserve the issue on appeal." Shoels v. Klebold, 375 F.3d 1054, 1061-62 (10th Cir. 2004) (internal quotation marks and citations omitted), cert. denied, 125 S. Ct. 1302 (2005).

In this case, King Soopers argued before the district court that it was entitled to recover damages for the value of the improvements because it owned those improvements, but it provided no authority for its argument. It did not attribute its ownership rights to the lease, although it now contends that the lease expressly confers such ownership rights. Instead, King Soopers' argument at trial was that it was entitled to recover for the improvements (presumably under the common law) and that the improvements would have zero net book value under GAAP upon termination of the lease. King Soopers did not introduce the lease as an exhibit at trial, nor draw the district court's attention to it in its arguments at sidebar. At best, King Soopers made vague references to its ownership rights, which are insufficient to preserve the argument that the lease demonstrated ownership of the improvements.

This court has "discretion to make exceptions in extraordinary circumstances." Shoels, 375 F.3d at 1062. We may reverse "a judgment on the basis of issues not raised below when . . . the issues involved are questions of

law, the proper resolution of which are beyond reasonable doubt, and the failure to address the issues would result in a miscarriage of justice." Petrini v. Howard, 918 F.2d 1482, 1483 n.4 (10th Cir. 1990) (per curiam).

Although this case involves a question of law in interpreting the lease agreement, this case does not constitute extraordinary circumstances. The resolution of the underlying issue is a matter of Colorado landlord-tenant law. Furthermore, its resolution is not beyond reasonable doubt because the lease is silent about the ownership rights of the improvements during the lease, despite King Soopers' contentions to the contrary. Finally, King Soopers cannot show a miscarriage of justice where the district court entered judgment in its favor for more than $3.2 million.

Next, King Soopers contends that, even in the absence of the express lease agreement, that it would still be deemed the owner of the leasehold improvements. Because King Soopers made this argument below, this court reviews the district court's decision for abuse of discretion. King Soopers cites three cases in support of its argument, but none of these cases establish that the district court abused its discretion in excluding the evidence of the improvements. It is undisputed that the lessor owned the improvements upon the termination of the lease. However, because the lease does not clearly confer ownership rights upon King Soopers, the common law of fixtures applies.

-20-

Under the common law, "[t]he general tests for determining whether a particular object has become a fixture are usually said to comprise annexation to the realty, adaptation to the use to which the realty is devoted, and intention that the object became a permanent accession to the freehold." Ferganchick v. Johnson, 473 P.2d 990, 992 (Colo. Ct. App. 1970) (internal quotation marks omitted) (affirming trial court's decision to award damages for value of fixtures in its condition at the time of removal or destruction); Puzzle Mining & Reduction Co. v. Morse Bros. Mach. & Supply Co., 131 P. 791, 792-93 (Colo. Ct. App. 1913) (determining that improvements were fixtures that became part of realty). In this case, King Soopers retained explicit ownership of equipment, fixtures, and furniture, but the lease was silent about ownership of the improvements. Under the common law, the improvements were annexed to realty, and the parties did not express clear intent that the improvements would not become a permanent accession to the freehold. King Soopers has not established that the district court abused its discretion in excluding evidence of improvements and refusing to instruct the jury.

Finally, King Soopers advances a policy argument that the lessor could not claim any value in the improvements under GAAP. Because King Soopers raised this argument below, this court reviews the district court's ruling for abuse of discretion. In an offer of proof, former CFO Warren testified that GAAP required

-21-

the improvements to be depreciated over the life of the lease, and that improvements have zero net book value at the termination of the lease. While King Soopers may be correct as a matter of accounting methods, it has cited no authority to support its contention that a lessee is permitted to recover damages for improvements because of GAAP. Rather, courts apply the common law of fixtures in the absence of express agreement in the lease. King Soopers has not shown that the district court abused its discretion in excluding evidence of leasehold improvements and refusing to instruct the jury on damages for improvements.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge